PARKER v. SHERMAN.

(Circuit Court of Appeals, Second Circuit. March 10, 1914.)

No. 91.

1. BANKRUPTCY (§ 287*)—PREFERENCES—FORM OF REMEDY.

Property transferred by a bankrupt, so as to effect a preference, or its value, may be recovered by a suit in equity.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 444–447; Dec. Dig. § 287.*]

2. BANKRUPTCY (§ 165*)—PREFERENCES VOIDABLE—TRANSFER OF PROPERTY.

That the proceeds of a transfer of property by a bankrupt were applied on a debt due the government did not prevent a recovery of the goods or their value, as, under Bankr. Act July 1, 1898, c. 541, § 64, 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447), there are four classes of payments to be made before the government is paid.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266; Dec. Dig. § 165.*]

3. BANKRUPTCY (§ 166*)—PREFERENCES VOIDABLE—INTENT OF PARTIES.

Under Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), providing that transfers of property by a bankrupt within four months prior to the filing of the petition with intent to hinder or defraud creditors shall be void except as to purchasers "in good faith" and for a present fair consideration, that a full and fair price was paid for the goods transferred would not alone sustain the transfer in the absence of good faith.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.*]

4. BANKRUPTCY (§ 166*)—PREFERENCES VOIDABLE—INTENT OF PARTIES.

An assistant postmaster, who had embezzled funds of the Post Office Department and who also kept a store, shortly before his bankruptcy gave the postmaster, who was liable to the government for the amount of the embezzlement, a bill of sale of the furniture and a chattel mortgage on the stock of goods. He then negotiated a sale of the goods to defendant, who was a personal friend of the postmaster and knew of the defalcation, the postmaster's liability, that the assistant postmaster had not sufficient funds to make the defalcation good, and who inquired as to liens on the property of a lawyer who knew about the bill of sale and chattel mortgage. The goods were removed in the nighttime by a little traveled road, and the cost of the removal paid by the postmaster. The entire purchase price was paid to the government, reducing its claim against the postmaster. Held, that defendant must have known of the postmaster's mortgage, and that the proceeds of the sale were to be paid to the government, for the postmaster's benefit, thus hindering and delaying other creditors of the assistant postmaster, and hence his purchase was not in good faith.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.*]

Appeal from the District Court of the United States for the District of Vermont.

This cause comes here on appeal from a decree of the District Court, District of Vermont, adjudging that the transfer of a stock of goods from the bankrupt to defendant was null and void and giving judgment to plaintiff against defendant for $1,430.57 with interest and costs. 201 Fed. 155. Decree sustained.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

T. W. Moloney, of Rutland, Vt., and G. W. Platt, of Poultney, Vt., for appellant.

S. E. Everts and C. E. Parker, both of Granville, N. Y., for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. [1] The suit was in equity, and defendant, under properly reserved exceptions, contends that it cannot be maintained, because complainant has an adequate and sufficient remedy at law. The case is on all fours with the one before us in Parker v. Black, 151 Fed. 18, 80 C. C. A. 484, where, in order that uniformity in bankruptcy practice in the several circuits might be secured, we followed the decisions of two other Circuit Courts of Appeals, although inclined, had it been a new question, to take a different view.

As found by the District Court, one Allen was postmaster in Granville, N. Y.; he gave the required bond to the government. Owens, the bankrupt, was assistant postmaster and a resident of Granville, where he kept a store in which the post office was located; he gave no bond. It was generally known in Granville that he was financially embarrassed. He embezzled funds belonging to the Post Office Department, amounting to $2,800, was arrested late in the fall of 1910, and released on bail. Allen as a bonded officer was, of course, liable to the government for the amount of money thus embezzled. On December 9, 1910, Owens gave to Allen a bill of sale of certain furniture, etc., that was exempt from attachment and also a chattel mortgage on his stock of goods. About that time there were several conferences between Owens and some of his creditors, including the officers of both the banks in Granville, as to raising more money. Both Allen and Owens consulted counsel before and after the giving of the bill of sale and chattel mortgage, and on the day following the last consultation (December 13th) Owens went to Poultney, Vt., and proposed to defendant Sherman to sell the latter his entire stock of goods at 50 per cent. of their cost price. Sherman told him he would take the goods if, upon conference with counsel, he found everything to be free from liens. Defendant then went to Granville, consulted a lawyer, and then informed Owens that he would take the goods on the terms offered and would come to Granville to work on the inventory. This he did, and two days later the goods, except some which he did not care to take, were removed from Granville and delivered to him at Poultney. He at once gave his check for upwards of $1,400, the purchase price, to Owens. This was all that the goods were worth. The stock of goods thus bought comprised substantially all the bankrupt's assets; his indebtedness exceeded $7,000 besides the amount of the defalcation. Immediately after the delivery of the goods, an involuntary petition in bankruptcy was filed against Owens, plaintiff was subsequently appointed trustee and brought this suit to set aside the transfer and recover the goods or their value.

Owens promptly cashed the check and turned over the entire proceeds to the government in part payment of the defalcation. To that

extent the claim of the government against Allen was reduced. The defendant and Allen were personal friends, frequently boarding at the same hotel and visiting each other.

It is contended that the sale of the goods was a violation of the statute of New York or of Vermont, depending upon the circumstance that it was consummated in one state or the other. That branch of the controversy need not be considered.

[2] It is also contended by the appellant that there can be no recovery because the goods, or rather their actual cash value was all turned over to the government, which has thus received what as a preferred creditor of Owens, it would have received had this estate been administered in the bankruptcy court, and that therefore as to the other creditors, the transfer was not preferential. This contention is unsound, what dividend the government would have received in bankruptcy proceedings cannot be told. Under section 64 of the Bankruptcy Act there are four classes of payments to be made out of the estate before the government receives anything.

[3] Much is made in argument of the finding of the District Court that the price paid for the goods was a full and fair consideration for them. But that circumstance alone is not sufficient. As provided in section 67e, the purchase must be not only "for a present fair consideration," but also "in good faith." Of the cases cited by appellant: In Cook v. Tullis, 18 Wall. 332, 21 L. Ed. 933, the court says such a transaction may be upheld "provided such dealing (the sale of bankrupt's property for a fair consideration) be conducted without any purpose to defraud or delay his creditors." In Sawyer v. Turpin, 91 U. S. 120, 23 L. Ed. 235, the transfer was made, "not with the purpose of defeating the section which provides for the ratable distribution of the property which the act undertakes to effect." In Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 815, the court says "we have a strong conviction * * * that the transaction * * * was without any fraudulent purpose." In Bernhisel v. Firman, 22 Wall. 170, 22 L. Ed. 766, the facts are quite different from those in the case at bar.

[4] The defendant testified that he had no knowledge of the bankrupt's financial condition except that he was embarrassed. We concur, however, with Judge Martin in the conclusion that his information as to the situation was much more complete. He knew of the defalcation and that his friend Allen would be obliged to make it good to the government; he knew that Owens had not sufficient funds to make good to Allen. He came to Granville to make inquiries of a lawyer, McCormick, as to what liens if any there were on the property; McCormick knew all about the bill of sale and the chattel mortgage to Allen. We have no doubt defendant was informed of this situation, and it is inconceivable that while it continued he would buy the goods covered by the mortgage for hard cash. He must have known that there was some reason for changing the arrangement, so that Allen, his friend, would give up all claim under the mortgage, provided defendant would buy the goods. The goods were removed

in the nighttime by a road but little traveled; defendant said the sleighing was better on that road; and Allen paid for the removal.

We are satisfied that the whole performance was a scheme concocted between defendant and Allen to get Owens' goods turned into cash through defendant's purchase, the cash to be used to reduce the government's loss, and therefore to that extent to reduce its claim against Allen; defendant knowing that Owens was insolvent and that Owens' intent and purpose was to hinder and delay his other creditors by turning the entire proceeds of the goods over to the government. We think the purchase was not "in good faith."

Decree sustained with costs.