## LEWINSON v. HOBART SERVICE TRUST CO. OF PASSAIC, N. J.

### In re ADA DRESS CO., Inc.

District Court, D. New Jersey.
April 22, 1931.

Bilder & Bilder, of Newark, N. J., for complainant.

Israel B. Greene, of Newark, N. J., for defendant.

FAKE, District Judge.

The issue here arises on a motion to strike out the complaint upon the ground that the cause of action as set forth therein is not cognizable in a federal court of equity.

At the trial, the complainant abandoned all of the allegations in the complaint, except those contained in counts 2, 4, and 5, thus limiting the issues to allegations charging a preferential payment either in violation of a New York statute in the event that the payment was made in that state, or in violation of a New Jersey statute if the payment was made in that state, and in any event, in violation of the federal Bankruptcy Act (11 USCA).

Motions were made to strike out counts 2 and 4 based upon the state statutes, but for present purposes it is not necessary to pass upon these motions, since a disposition of the motion directed to the equity jurisdiction of this court may dispose of the entire case.

The relief sought under the complaint is the recovery of the sum of $9,979.14, by the trustee in bankruptcy, on the theory that the said sum was paid by the bankrupt to the defendant on the eve of bankruptcy, defendant having cause to believe that by said payment a preference was intended.

It is contended by counsel for the defendant that the United States District Courts sitting in equity have no jurisdiction to set aside and turn over to the trustee moneys preferentially paid as alleged in the complaint, the issue being cognizable solely at law.

In considering the question thus raised, no decision has been found directly in point by the Judges of our Circuit Court of Ap-

peals, nor by the United States Supreme Court. However, the First, Second, Fourth, and Seventh Circuit Courts of Appeal have held that federal courts of equity are clothed with jurisdiction to set aside and decree the turnover of money paid by way of preference in violation of the terms of the Bankruptcy Act (section 60 [11 USCA § 96]). See Reed v. Guaranty Security Co. (D. C.) 291 F. 580, and cases therein cited, for the rulings in the First Circuit; Parker v. Black, 151 F. 18, for the Second Circuit; Cox v. Wall (D. C.) 99 F. 546 affirmed 101 F. 403, for the Fourth Circuit; Off v. Hakes, 142 F. 364, for the Seventh Circuit.

It should be noted that the opinion in Parker v. Black, supra, contains the following language: "Upon this point we think we should follow the decisions made by two different Circuit Courts of Appeal upon a state of facts practically identical with those of the present case, notwithstanding we should have been of a different opinion if the question had been originally presented to us." And again, the same court seven years later in Parker v. Sherman, 212 F. 917, says this: "The case is on all fours with * * * Parker v. Black, 151 F. 18, 80 C. C. A. 484, where, in order that uniformity in bankruptcy practice in the several circuits might be secured, we followed the decisions of two other Circuit Courts of Appeals, although inclined, had it been a new question, to take a different view."

Rulings directly opposed to those contained in the foregoing citations are found in the Sixth and Eighth Circuit Courts of Appeal. See Warmath v. O'Daniel, 159 F. 87, 16 L. R. A. (N. S.) 414, for the ruling in the Sixth Circuit, and First State Bank of Milliken v. Spencer, 219 F. 503, for the ruling in the Eighth Circuit. To the like effect are the rulings by two United States District Court Judges sitting in Pennsylvania, which state is in this (the Third) Circuit, see Sessler v. Nemcof, 183 F. 656, and Rosenthal v. Heller, 266 F. 563.

The lines of departure which mark the sharp conflict in judicial approach between the two groups of cases above cited are explained with such logic and so convincingly are they adhered to by some of the judges, that the question is fraught with much difficulty and cannot be finally settled until it reaches the court of last resort.

Attention is directed to section 267 of the Judicial Code (28 USCA § 384) which provides: "Suits in equity shall not be sustained in any court of the United States in any case where a plain, adequate, and complete remedy may be had at law." In passing upon this provision in Buzard v. Houston, 119 U. S. 347, 7 S. Ct. 249, 251, 30 L. Ed. 451, Mr. Justice Gray said: "The effect of the provision * * * as often stated by this court, is that 'whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury.'" In N. Y. Guaranty Co. v. Memphis Water Co., 107 U. S. 205, 2 S. Ct. 279, 286, 27 L. Ed. 484, Mr. Justice Bradley said of it: "This enactment certainly means something; and, if only declaratory of what was always the law, it must, at least, have been intended to emphasize the rule, and to impress it upon the attention of the courts."

If this court has jurisdiction in the instant case, that jurisdiction must be traced to an origin in the English courts of equity prior to the year 1789 when the above section of our Judicial Code first took effect, State of Pennsylvania v. Wheeling Bridge, 13 How. 518, 563, 14 L. Ed. 249, or find its origin here in the Constitution or an act of Congress. In the absence of anything directly in point, either in the Constitution or in acts of Congress, our inquiry is confined to an investigation of English sources.

As early as the year 1542, we find what has been said to be the first English Bankruptcy Act. Stat. 34–35 Henry VIII, chap. 4, superseded by Stat. 13 Eliz. c. 7, in the year 1570. The latter forms the basis upon which our modern bankruptcy acts have been modeled, and it is noted that the language of 13 Eliz. c. 5 bears marked similarity to the language of our Bankruptcy Act to-day, in so far as preferential payments in contemplation of bankruptcy are concerned. See "The Case of Bankrupts," Trin. 31 Eliz. (1584), Smith v. Miller, 1 Coke's Reps. 481, and cases there collected.

In view of the history of the experiences with bankruptcy acts in England from 1542 down to the year 1789, it is pertinent and indeed of major importance to ascertain how the English courts were treating with the subject of preferential payments at the time of our severance from the mother country, having particular regard for the year 1789 for the reasons hereinbefore stated.

In the case of Rust et al., Assignees of Henry & Richard Papps v. Cooper in the

year 1777, 2 Cowp. 629, 98 Eng. Rep. 1277, we find assignees in bankruptcy suing in trover to recover a fraudulent preferential transfer of property made by the bankrupt on the eve of bankruptcy. The jury awarded a verdict for the plaintiff for the value of the goods.

Thompson v. Freeman (1786) 1 Tr. 155, 99 Eng. Rep. 1026, was also an action in trover by an assignee in bankruptcy to recover goods seized under a levy, where it was alleged the judgment was collusive and fraudulent. Neither in this nor in the preceding case was it suggested that the action might be brought in equity. Indeed, in the arguments on rules in arrest of judgments, the actions at law seem to have been so well established that the question of jurisdiction was not touched upon. Other instances of actions at law to recover preferences in the English courts a few years after 1789 are Barnes v. Freeland (1794) 6 Tr. 80, 101 Eng. Rep. 447; Smith v. Payne (1795) 6 Tr. 152, 101 Eng. Rep. 484, and we find Lord Chancellor Loughborough, in Ex parte Scudamore (1796) 3 Ves. 280, 30 Eng. Rep. 907, directing an action at law to recover a preference. He said: "You are applying on behalf of the assignees desiring me to direct the money to be paid over. I do not think I can make that order. * * * Let an action be brought against Haverfield if the parties shall think proper." The facts here showed that one Williams held moneys in trust for Haverfield, and it was contended that the trust amounted to a fraudulent preference. At that time the Chancellor appointed the bankruptcy commissioners, and the matter appears to have come before him by virtue thereof.

Under the Stat. of 13 Eliz. C. 5, it was not the practice to resort to equity to set aside a fraudulent conveyance. The creditor proceeded as though no conveyance had been made, and execution on his judgment ran against the property with like force and effect as though the transfer had no existence. See Glenn on Creditors Rights and Remedies, page 58.

In commenting on the jurisdiction of equity courts to set aside a fraudulent transfer of goods, Baron Parke said, in the year 1843: "Equity jurisdiction * × * we apprehend has arisen in comparatively modern times." Imray v. Magnay, 152 Eng. Rep. 803. We are not concerned here with the concurrent jurisdiction of equity to set aside fraudulent conveyances of real property, since this forms an interesting subject in itself.

Many cases arising in the Court of Chancery of New Jersey have been cited by counsel for complainant in the instant case. There is no doubt but that in equity in New Jersey such an action as this might well be instituted, but in the federal courts we are limited by the Judicial Code which does not confine the Chancellor and Vice Chancellors of the state court. This limitation on the federal court and the freedom of the state court from it are mentioned by Mr. Justice Dixon in Eggers v. Anderson, 63 N. J. Eq. 264 at page 271, 49 A. 578, 55 L. R. A. 570. See, also, Kuntz v. Tonnele, 80 N. J. Eq. 373, 84 A. 624, and cases therein discussed by Vice Chancellor Garrison.

The conclusion here is that the English Court of Chancery was not exercising jurisdiction to set aside preferential transfers of personal property prior to 1789, except possibly in cases of equitable assets not subject to levy under 13 Eliz. C. 5, since it was at that time well established that an adequate remedy existed at law and, therefore, no such jurisdiction then attached to our federal courts of equity. Had the English courts been exercising such jurisdiction, our federal courts would have been ousted of it by virtue of the clear prohibition in section 267 of the Judicial Code. The scope and effect of executions issued on judgments at law have been greatly enlarged in recent years. This, again, further limits the federal equity jurisdiction, since here the remedy is contemplated as the major factor in ascertaining jurisdiction. Obviously, this court cannot, either for the furtherance of uniformity, the promotion of comity, or for mere expediency, enlarge upon that jurisdiction to which we are by statute confined. This means there is no concurrent jurisdiction here as between equity and law such as exists in the state courts of New Jersey and in the courts of other states.

Where a plain, adequate, and complete remedy at law exists, the suit must be instituted in the law court, and such remedy does exist covering the cause of action outlined in the complaint herein.

No question is raised here as to whether or not jurisdiction may be assumed where objection is not seasonably made; that point is, therefore, not passed upon in this opinion.

A decree will be entered against the complainant in conformity with these views.