In the Matter of ASSOCIATED GRO-CERS OF NEBRASKA COOPERA-TIVE, INC., Debtor.

ASSOCIATED GROCERS OF NEBRAS-KA COOPERATIVE, INC., Plaintiff,

v.

NABISCO BAKERS, Defendant.

Bankruptcy No. BK82–1518.

Adv. No. A84–311.

United States Bankruptcy Court, D. Nebraska.

Feb. 8, 1985.

Robert Ginn, Omaha, Neb., for debtor/plaintiff.

Harry D. Dixon, Jr., Omaha, Neb., for defendant.

## MEMORANDUM AND ORDER

DAVID L. CRAWFORD, Bankruptcy Judge.

This matter comes before the Court on the motion to dismiss filed by the defendant who seeks dismissal of this adversary proceeding for this Court's lack of jurisdiction to try this preference case under 11 U.S.C. Section 547.

The statute under which we operate, 28 U.S.C. Section 157(b)(2)(F), effective July 10, 1984, expressly confers jurisdiction on the Bankruptcy Courts of the United States "... to determine, avoid, or recover preferences." The issue here is whether or not that grant of jurisdiction to a non-Article III Court is constitutional.

I begin with the observation that there is no United States Supreme Court case determining that such a claim can be tried by a non-Article III Court.

*Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), is not applicable to this case, for *Katchen v. Landy* ultimately is a case in which jurisdiction for a non-Article III Court to try the preference cause of action was sustained on the theory of consent. In that case consent arose by virtue of the filing of a claim by the defendant, the preference cause of action having arisen by the filing of an objection to that claim. *Katchen v. Landy* is not applicable to this case where the defendant does not consent and, in fact, objects strenuously to the jurisdiction of this Court over this cause of action.

The pivotal point in my view is Article III of the United States Constitution which says that the judicial power of the United States is to be vested in lifetime-tenured judges who enjoy the benefits of that lifetime tenure and undiminishable salaries, and not, as the defendant suggests, *Northern Pipeline Construction v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

The *Marathon* case suggests that there are three categories under which non-Article III Courts may litigate matters. Those exceptions arise not from the literal language of Article III but from case law and are (1) territorial courts; (2) cases involving courts-martial; and (3) those courts which deal with public rights, as opposed to private rights.

The cases which are discussed in *Marathon* are reviewed in an article in 16 *Creighton Law Review*, No. 2, beginning at page 441, by Professor David P. Currie of the University of Chicago. In that article Professor Currie notes prior cases and their treatment of what is deemed a public right. Currie, "Bankruptcy Judges and the Independent Judiciary," 16 *Creighton L.Rev.*, No. 2, 441 (1982–1983).

Public rights are those in which the government is involved in its sovereign capacity under an otherwise valid statute creating enforceable public rights. The Tax Court is an example as are certain administrative boards and tribunals, such as those of the Federal Trade Commission, the Interstate Commerce Commission, and the Federal Communications Commission, in which certain litigation and fact-finding processes are undertaken by citizens against their government.

That is not, however, the situation we have here. In the instant case the litigation is by the debtor-in-possession against a nonconsenting third party. This is not litigation against the government.

Professor Currie concludes in his article that the vesting of this kind of jurisdiction in a non-Article III Court is unconstitutional, and I agree. It seems to me that for this defendant to be sued by a private party in a non-Article III Court takes away from the defendant the right to have the case decided by a judge who has lifetime tenure and an undiminishable salary, and that is exactly what Article III was intended to insure.

The problem with that conclusion is twofold. First, Justice Brennan's opinion in the *Marathon* case contains language suggesting that when Congress does not have to create a right but elects to do so, it may somehow define the forum in which that litigation may take place. I agree with others that that language is unnecessary to the decision of *Marathon* because that case dealt with a state-created cause of action and not with a right created by Congress. I conclude that prior case law did not warrant Justice Brennan's extension and that his language is dictum and unnecessary to that decision.

The second problem stems from a case called *In re Hansen,* and also cited as *First National Bank v. Hansen,* 702 F.2d 728, 10 B.C.D. 280 (8th Cir.) 1983, a decision by the Court of Appeals for the Eighth Circuit construing and determining the constitutionality of what is known as the "Interim Rule." In *First National Bank v. Hansen,* the Eighth Circuit determined that the Interim Rule was constitutional. That poses a problem in declaring the present statute unconstitutional. However, I conclude that *In Re Hansen,* to the extent that it concluded that the Interim Rule was constitutional, did so on the basis that it was an interim measure only, and would have reached a different opinion if the Interim Rule had been statute instead of emergency rulemaking.

■ Because neither Justice Brennan's language in *Marathon,* which is dictum, nor *First National Bank v. Hansen* compel my decision to the contrary, I conclude that the statutory provision 28 U.S.C. 157(b)(2)(F) is unconstitutional and in direct violation of Article III of the United States Constitution, and that its attempt to vest jurisdiction in a non-Article III Court is improper and cannot be sustained.

The remedy is to sustain the motion to dismiss. It is so ordered.