**In re BOSS–LINCO LINES, INC., Debtor.**

**BOSS–LINCO LINES, INC., and the Official Creditors' Committee of Boss-Linco Lines, Inc., Plaintiffs,**

**v.**

**LAIDLAW TRANSPORTATION LIMITED, Laidlaw Transportation, Inc., Laidlaw Transport, Inc., and Boss Acquisition Corporation, Defendants.**

**LAIDLAW TRANSPORTATION LIMITED, Laidlaw Transportation, Inc., Laidlaw Transport, Inc., and Boss Acquisition Corporation, Third-Party Plaintiffs,**

**v.**

**ESTATE OF James C. FINDLAY, Daniel J. Celani, and William P. Finnerty, Third-Party Defendants.**

**Bankruptcy No. 82–10812 M.**
**Adv. No. AP–82–1266 M.**

United States Bankruptcy Court, W.D. New York.

Nov. 27, 1985.

Moot & Sprague (Carl L. Bucki, and Joseph V. Sedita, of counsel), Buffalo, N.Y., for plaintiff-debtor Boss-Linco Lines, Inc., and also appearing at this hearing on behalf of The Official Creditors' Committee of Boss-Linco Lines, Inc.

Phillips, Lytle, Hitchcock, Blaine & Huber (Paul K. Stecker, Robert M. Spaulding, and John C. Chobot, of counsel), Buffalo, N.Y., for defendants.

BERYL E. McGUIRE, Bankruptcy Judge.

Boss-Linco Lines, Inc., an interstate trucking carrier, filed its petition for relief under the provisions of chapter 11 of the Bankruptcy Code on March 19, 1982.[1]

The issue before the Court at this time arises in the context of the above captioned adversary proceeding.[2] It was initiated on April 27, 1982.[3] The initial complaint was amended and parties added and deleted.[4] Currently before the Court is a second amended complaint filed on November 15, 1983, which the defendants answered on December 5, 1983.[5]

[1] The case is still a pending chapter 11 case in this Court. No disclosure statement or plan of reorganization has been filed. This adversary proceeding is the debtor's most significant asset. A trustee was appointed on August 8, 1984.

[2] Arguments were presented by counsel on June 11, 1985, and numerous memoranda have been filed. Decision was reserved.

[3] The defendants named in the original complaint are: Laidlaw Transport, Inc., Boss Acquisition Corp., Laidlaw Transportation Limited, Liberty National Bank & Trust Co., Michael G. Degroote, Estate of Charles C. French, Douglas R. Gowland and Leslie W. Haworth.

[4] On April 25, 1983, the debtor, now joined by the Official Creditors' Committee, filed a First Amended Complaint which, like the original complaint, was entitled "Complaint to Set Aside Transfers and For Other Relief." Pursuant to a Stipulation and Order directing amendment of the caption nunc pro tunc only three of the defendants named in the original complaint are named in the First Amended Complaint. They are: Laidlaw Transport, Inc., Boss Acquisition Corporation and Laidlaw Transportation Limited. Laidlaw Transportation, Inc., is not named in the First Amended Complaint.

[5] The Second Amended Complaint adds Laidlaw Transportation, Inc. as a defendant.

Familiarity with the rather complex relationships among the parties may be of interest but is not essential to decision; an organizational chart illustrating these relationships is as follows:

Essentially the complaint alleges that these defendants, in concert and for improper purposes, purchased and took control of the debtor and stripped it of its major assets, namely, its trucking terminals and rolling stock, before selling the company to Owcen, a company formed by the debtor's employees.

The second amended complaint contains fourteen causes of action. Asserted grounds for recovery include alleged preferences and fraudulent conveyances under §§ 547 and 548, Title 11 U.S.C. Several state law claims under New York's Business Corporation Law and Debtor and Creditor Law also are asserted. The real and personal property, which is the subject of many of the causes of action, has been sold by agreement between the parties,[6]

Laidlaw Transportation Limited
(defendant)
.
.
.
Laidlaw Transportation, Inc.
(defendant)

Boss Acquisition Corporation     Laidlaw Transport, Inc.
(defendant)                      (defendant)
.
.
.
Boss-Linco Lines, Inc.
(plaintiff-debtor)

6. The parties stipulated to a sale of the property, which is the subject of the transfers and conveyances at issue, in a Stipulation and Order dated June 10, 1982. Such Stipulation and Order was approved by the Court on July 8, 1982. Under the terms of that Stipulation, the defendant, Laidlaw Transportation Limited, has guaranteed the full payment of any judgment entered in this proceeding against any of the defendants named in the Second Amended Complaint. Additionally, it should be noted that the parties agreed to the sale of the subject property to protect and preserve the value of the property by substituting such property for cash since its market was limited and it was both depreciating and subject to loss and damage. See Application Pursuant to Bankruptcy Rule 906(c) filed June 18, 1982.

7. By Order of this Court dated June 14, 1985, all counterclaims against the plaintiff-debtor and all third-party claims are severed for separate trial. That Order also stayed the trial of such counterclaims and third-party claims pending

and plaintiffs, therefore, now seek only monetary relief. Although counterclaims and third party claims are involved in this litigation, they have been stayed and severed, respectively,[7] pending a final determination of the issues raised in the second amended complaint.

Turning to the issue at hand, the defendants assert that the various actions involved in the second amended complaint are "core" proceedings as that term is used in § 157(b), Title 28 U.S.C.; being variously within subsections 157(b)(2)(C), (H), (K) or (O).[8] Accordingly, although defendants initially filed a blanket demand for a jury trial in the proceeding,[9] they now seek a ruling that they and plaintiffs have no constitutional or statutory right to jury trial.[10]

final determination of the claims set forth in the plaintiffs' Second Amended Complaint.

8. *See* Defendants Supplemental Memorandum In Opposition to Trial by Jury at 3.

9. The defendants filed an Answer to the First Amended Complaint on May 13, 1983. Subsequently, on May 24, 1983, the defendants filed a demand for "trial by jury of all issues in [this proceeding] and [the] third-party action."

10. Although the defendants initially filed a demand for trial by jury of all issues in this adversary proceeding, they added to that demand in the "wherefore" clause of their Answer to the Second Amended Complaint wherein they sought a jury trial on "all issues so triable raised by their counterclaims." The defendants now oppose a trial by jury of the causes of action set forth in the plaintiffs' Second Amended Complaint. In support of their position, the defendants argue that the plaintiffs have never demanded a jury trial for the actions stated in their original or amended complaints. Additionally, the defendants argue that since, in their view, the causes of action asserted in the Second Amended Complaint do not carry with them a right to trial by jury, the defendants' jury demand was operative only with respect to the counterclaims asserted against the plaintiffs and the third-party actions. Consequently, with the severance of the counterclaims and third-party actions from the causes of action asserted in the Second Amended Complaint and the stay of trial of the former, defendants argue the remaining issues should be determined by this Court after a bench trial.

At a pretrial conference on May 22, 1984, the defendants stated that they intended to withdraw their jury demand. However, the plain-

The plaintiffs, in opposition, assert entitlement to a jury trial on the preference and fraudulent conveyance causes of action,[11] and argue that defendants' present position is simply a delaying tactic.[12]

Therefore, the Court's rather narrow inquiry is 1) whether the preference and fraudulent conveyance causes of action are "core" proceedings within § 157(b), Title 28 U.S.C., and 2) if so, whether, in the context of this proceeding, plaintiffs are entitled to a jury trial.

Decision of these issues initially warrants a brief historical review of the juris-

dictional provisions of earlier Bankruptcy Acts, starting with the 1898 Act.[13]

## HISTORICAL REVIEW

### A.

### The 1898 Act

The '98 Act contained two distinct lines of jurisdictional authority[14].

The first, often referred to as summary jurisdiction,[15] was found in section 2 of the Act (section 11 of former Title 11 U.S.C.) and conferred upon the courts of bankruptcy,[16] original jurisdiction at law and in equi-

---

tiffs have refused to consent to a withdrawal of the demand. The Court cannot authorize withdrawal over the objection of the plaintiffs, since Bankr.R. 9015(c) requires the consent of the parties as a prerequisite to withdrawal. Consequently, the defendants now seek a determination, pursuant to Bankr.R. 9015(b)(3), that there is no right to trial by jury of the causes of action asserted in the Second Amended Complaint. *See* Memorandum In Support of Defendants' Motion For Severance and In Opposition to Trial by Jury at 2–4.

11. *See* Plaintiffs' Sur-Reply Memorandum of Law at 3–11.

12. On June 6, 1983, this adversary proceeding was transferred to the District Court, in light of the jury demand, as required by the Emergency Rule then in effect. Subsequently, the '84 Amendments were enacted and this adversary proceeding was referred back to this Court for further proceedings. Once this Court was in a position to address this adversary proceeding, the defendants objected to trial by jury, thus initiating the present dispute. *See* Plaintiffs' Responding Memorandum at 1.

13. Bankruptcy Act of 1898, ch. 541, §§ 2 and 23, 30 Stat. 544, 545 and 552 (codified as amended at §§ 11 and 46 of former Title 11 U.S.C.) (repealed 1979).

14. *Id.* Additionally, it should be noted that the jurisdictional provisions of the 1898 Act parallel those found in its predecessor, the Act of 1867, although under the earlier Act, the district court's jurisdiction over plenary matters was much broader. *See* Bankruptcy Act of 1867, ch. 176, §§ 1 and 2, 14 Stat. 517–18 (repealed 1878).

15. It was "convenient" to use the term "summary jurisdiction" or "summary proceedings" to describe cases over which the bankruptcy court had exclusive jurisdiction under the Act of 1898, "[s]ince in [such] cases ... the bankruptcy court can, and usually does, act in a summary man-

ner." 2 *Collier on Bankruptcy* ¶ 23.02[1] (14th ed. 1976) (footnotes omitted).

While section 2 of the 1898 Act conferred exclusive jurisdiction upon the bankruptcy courts over summary proceedings, section 23 of that Act governed the district court's jurisdiction with regard to plenary actions. *See infra* note 20.

*Collier* summarizes the distinctions between summary and plenary proceedings as follows: [A] summary proceeding will usually be instituted and carried out in a quicker, less formal manner than that necessary in the ordinary law suit. Less attention and emphasis will be placed on formal pleadings, although the presence of such will not necessarily make a summary proceeding a plenary one. The hearing may be brief and less formal than the ordinary trial; but notice and hearing are generally necessary to satisfy the requirement of due process. A plenary suit, on the other hand, is the regular, ordinary, civil action, with summons [or subpoena], formal pleadings, full trial, judgment and the other attendant formalities.
2 *Collier on Bankruptcy* ¶ 23.02[2] (14th ed. 1976) (footnotes omitted).

16. Section 2 of the '98 Act created the courts of bankruptcy, defined in § 1 of that Act, and conferred jurisdiction upon such courts. "Courts of bankruptcy" were defined in § 1(10) of the '98 Act (section 1 of former Title 11 U.S.C.) (repealed 1979) to "include the United States district courts and the district courts of the Territories and possessions to which this title is or may hereafter be applicable." In turn, subsection 9 of that section defined the term "court" to embrace the "judge [as distinguished from the referee] or the referee of the court of bankruptcy in which the proceedings are pending." It should also be noted that section 38 of the 1898 Act (section 66 of former Title 11 U.S.C.) (repealed 1979) conferred jurisdiction upon the referees to perform, subject to review by a district judge, all duties conferred upon the

ty over proceedings under the Act. Administrative matters, disputes involving property in the actual or constructive possession of the court,[17] and many disputes relating to the bankrupt's discharge were within the ambit of this grant of authority.[18]

The second, often referred to as the district court's plenary jurisdiction,[19] was found in section 23 of the Act (section 46 of former Title 11 U.S.C.), and in reality was

more of a limitation on, rather than a conferral of, authority. It limited the district court's jurisdiction over controversies at law and in equity.[20] Generally speaking, this meant that such controversies could not be tried in the federal courts, but only in the state courts, unless an independent ground for federal jurisdiction existed. By later amendments in 1903 and 1910, this limitation was altered to grant the federal courts concurrent jurisdiction over plenary suits arising under sections 60, 67 or 70 of

---

courts of bankruptcy, except as otherwise provided in that Act.

**17.** *See infra* note 20.

**18.** For a more detailed discussion of the range of issues which fell within the bankruptcy court's summary jurisdiction, see 2 *Collier, supra* note 15, at ¶ 23.04 and authorities cited therein.

**19.** *See supra* note 15.

**20.** Section 23 of the Bankruptcy Act of 1898 related to the jurisdiction of the district courts, as opposed to courts of bankruptcy, over "controversies at law and in equity, as distinguished from proceedings under [the 1898 Act]." Such controversies generally required the acquisition of *in personam* jurisdiction, since the disputes involved rights or property not in the actual or constructive possession of the court.

Section 23 of the 1898 Act provided:

(a) The United States district courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings under this title, between receivers and trustees as such and adverse claimants, concerning the property acquired or claimed by the receivers or trustees, in the same manner and to the same extent as though such proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

(b) Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this title had not been instituted, unless by consent of the defendant, except as provided in sections [60, 67 and 70] of this title.

The phrase "proceedings under this title" was construed to necessarily include i) proceedings relating directly to the administration of the case, and ii) *disputes arising out of the bankruptcy case involving property of the estate* which was in the actual or constructive possession of the court. Hence, section 23 did not restrict the bankruptcy court's authority with regard to *in rem* or *quasi in rem* actions, i.e., with regard to disputes involving property in

the actual or constructive possession of the bankruptcy court. *See* 2 *Collier, supra* note 15, at ¶ 23.03 and authorities cited therein.

In explaining the legal principles underlying the jurisdictional structure established by the 1898 Act, the Supreme Court in *Murphy v. John Hofman Co.*, 211 U.S. 562, 29 S.Ct. 154, 53 L.Ed. 327 (1909), stated:

The bankrupt act of 1898 [30 Stat. at L. 544, chap. 541, U.S.Comp.Stat.1901, p. 3418], as originally enacted, did not confer jurisdiction on the district courts of the United States over suits brought by trustees in bankruptcy to assert title to property as assets of the bankrupt, or to set aside transfers made by the bankrupt in fraud of the creditors or by way of preference, unless by consent of the defendant. The act, however, preserves the jurisdiction, otherwise existing by statute, of the courts of the United States, though it is limited to courts where the bankrupt himself could have prosecuted the action. But, where the property in dispute is in the actual possession of the court of bankruptcy, there comes into play another principle, not peculiar to courts of bankruptcy, but applicable to all courts, Federal or state. Where a court of competent jurisdiction has taken property into its possession, through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The court, having possession of the property, has an ancillary jurisdiction to hear and determine all questions respecting the title, possession, or control of the property. In the courts of the United States this ancillary jurisdiction may be exercised, though it is not authorized by any statute. The jurisdiction in such cases arises out of the possession of the property, and is exclusive of the jurisdiction of all other courts, although otherwise the controversy would be cognizable in them.

*Id.* at 568–69, 29 S.Ct. at 156 (citations omitted).

In addition to its *in rem* and *quasi in rem* jurisdiction, the bankruptcy court could obtain summary jurisdiction over plenary matters by consent under section 2(a)(7) and thereby act in summary manner. *See* 1 *Collier, supra* note 15, at ¶ 2.40.

the Act (sections 96, 107 and 110 of former Title 11 U.S.C.). Thus, the district courts acquired jurisdiction to hear preference and fraudulent conveyance plenary litigation.[21]

## B

## The 1978 Reform Act

The '78 Bankruptcy Reform Act[22] initially placed full jurisdictional authority in the district courts and then passed that authority through to the bankruptcy courts. This jurisdictional grant was comprehensive, thus, ending the summary and plenary dichotomy of the '98 Act.[23]

In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), of course, the Supreme Court found this grant

**21.** Sections 60, 67 and 70 of the Bankruptcy Act of 1898 (sections 96, 107 and 110 of former Title 11 U.S.C.) (repealed 1979) provided for the avoidance or recovery of (i) preferences, (ii) fraudulent liens and fraudulent transfers and (iii) transfers or obligations which would be voidable under any federal or state law by a creditor of the debtor, respectively. Section 60(b), which related to preferences, provided: "For the purpose of any recovery or avoidance under this section, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction." Likewise, sections 67(e) and 70(e) had comparable provisions.

Although the jurisdictional grants contained in those sections refer to courts of bankruptcy, it was well settled that the referee, absent consent, did not have jurisdiction over plenary preference or fraudulent conveyance suits. The logical construction of those provisions is that Congress intended to confer jurisdiction over such actions on the district courts as courts of first instance, rather than as courts of bankruptcy. *See* 2 *Collier, supra* note 15, at ¶ 23.15 and authorities cited therein.

However, it should also be emphasized that the grants of plenary jurisdiction to the district courts contained in sections 60(b), 67(e) and 70(e), by their terms, recognized that not every action to avoid or recover under those sections would necessarily entail a plenary proceeding. If an action under one of those sections concerned property in the actual or constructive possession of the court, the proceeding would be summary in nature and the court's jurisdiction would flow from section 2 of the 1898 Act. *See supra* notes 15 and 20.

On the other hand, if the action concerned rights or property which was in the possession of a third party who had a bona fide adverse claim to it, a full-scale civil suit, i.e., a plenary proceeding, was required and section 23 of the 1898 Act governed the court's jurisdiction. Section 23 granted jurisdiction over plenary proceedings to the district court, as a court of first instance, as follows:

1. First, if such a suit involved an action under § 60(b), § 67(e) or § 70(e) the district courts had concurrent jurisdiction with the state courts, and the trustee had his choice of tribunals in which to bring the action;

2. Second, if the action was not brought pursuant to § 60(b), § 67(e) or § 70(e), the district court was granted jurisdiction if (i) the adverse claimant consented to such jurisdiction, or (ii) absent bankruptcy, the suit could have been commenced in federal court based on the existence of a federal jurisdictional predicate such as diversity of citizenship.

**22.** The Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549 (codified as amended at 11 U.S.C. and scattered sections of 28 U.S.C.).

**23.** The jurisdictional provisions of the '78 Reform Act, prior to its amendment in 1984, were contained in § 1471, Title 28 U.S.C. (repealed 1984). That section provided:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, whereever [sic] located, of the debtor, as of the commencement of such case.

As background and for a good comparison of the jurisdictional provisions under the '78 Reform Act and the '84 Amendments, see Taggart, *The New Bankruptcy Court System*, 59 *Am. Bankr.L.J.* 231 (1985).

of jurisdiction to the non-Article III bankruptcy courts to be overbroad and violative of Article III of the U.S. Constitution. This '78 grant encompassed original and exclusive jurisdiction of all cases under Title 11, as well as original, but nonexclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11.[24] The Court in *Marathon* focused upon the latter jurisdictional grant, that is, the bankruptcy courts' jurisdiction over proceedings only "related" to cases under Title 11.[25]

## C

### The 1984 Amendments

The '84 amendments to the Bankruptcy Reform Act[26] formed the Congressional response to *Marathon*. Proceedings only related to a bankruptcy case are treated in a discrete subsection, § 157(c), Title 28 U.S.C., a subsection whose provisions closely parallel provisions of the Federal Magistrate's Act.[27]

■ Other bankruptcy proceedings, denominated "core proceedings" and defined as those which arise under or arise in a case under Title 11, are addressed in § 157(b), Title 28 U.S.C.[28] Here the bankruptcy courts, given an appropriate order of reference, are required to address such litigation and enter dispositive orders and judgments.[29]

The nonexclusive listing of "core" proceedings contained in section 157(b)(2), includes, as "core", proceedings involving preferences or fraudulent conveyances as well as much of that jurisdictional authority which had been viewed as being within the bankruptcy court's summary jurisdiction under the '98 Act. Moreover, preference and fraudulent conveyance actions are proceedings which "arise under" title 11 rather than being merely "related" to a case under title 11.

## DISCUSSION

The background review of the '98 Act and the discussion of precedents to this point illustrate that the bankruptcy courts currently have authority to exercise not only much of the jurisdiction characterized as "summary" under that Act, but also preference and fraudulent conveyance jurisdiction which had been "plenary" under that Act. This grant of jurisdiction perhaps may be Congress' response to the plurality's observations in *Marathon* as to the appropriateness, with respect to federally created rights, of assigning to non-Article III tribunals, and allowing them to perform, specialized adjudicatory functions.[30]

Concomitant with the exercise of this jurisdiction under Title 11, is observance of the commands of the Seventh Amendment. Although there are those that question the authority of the bankruptcy courts to con-

---

24. *See supra* note 23.

25. *See In re Nanodata Computer Corp.,* 52 B.R. 334, 339 n. 9, 13 B.C.D. 488, 491 n. 9 (Bankr.W. D.N.Y.1985).

26. The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (codified in scattered sections of 11 U.S.C. and 28 U.S.C).

27. See *Nanodata,* 52 B.R. at 340, 13 B.C.D. at 492 and cases cited therein.

28. *Id.,* 52 B.R. at 340–41, 13 B.C.D. at 492. Subdivision (1) of § 157(b), Title 28 U.S.C., provides:
    (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core

proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

29. *See supra* note 28.

30. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 80–83, 102 S.Ct. 2858, 2876–77, 73 L.Ed.2d 598 (1982). It is apparent, of course, that whatever the genesis of this added grant of authority, the grant in and of itself may have troublesome constitutional implications. See e.g. *In re Associated Grocers of Neb. Coop., Inc.,* 46 B.R. 173, 12 B.C.D. 737 (Bankr.D.Neb.1985) and King, *Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984,* 38 *Vand.L.Rev.* 675, 692–93 (1985).

duct jury trials under the '84 Amendments,[31] this Court finds no basis for believing that the Congress in enacting the '84 Amendments found any greater necessity for spelling out the mandates of the Seventh Amendment than it had in enacting the '78 Reform Act.[32]

As a consequence of concurrent plenary jurisdiction under the '98 Act, both the federal and state courts had the opportunity to pass upon jury entitlement in the context of preference as well as fraudulent conveyance plenary litigation.

## A

### Preferences

In 1931, the District Court for the District of New Jersey in *Lewinson v. Hobart Service Trust Co. of Passaic, N.J.*, 49 F.2d. 356 (D.N.J.1931), had occasion to consider whether preference suits were cognizable at law or in equity; a point having obvious implications on the jury trial question and one on which the Circuits were then divided. In addressing this question, the Court undertook a review of English authorities. It initially observed:

> As early as the year 1542, we find what has been said to be the first English Bankruptcy Act. Stat. 34–35 Henry VIII, chap. 4, superseded by Stat. 13 Eliz. c. 7, in the year 1570. The latter forms the basis upon which our modern bankruptcy acts have been modeled, and it is noted that the language of 13 Eliz. c. 5 bears marked similarity to the language of our Bankruptcy Act to-day, in so far as preferential payments in contemplation of bankruptcy are concerned. See "The Case of Bankrupts," Trin. 31 Eliz. (1584), Smith v. Miller, 1 Coke's Reps. 481, and cases there collected.

In view of the history of the experiences with bankruptcy acts in England from 1542 down to the year 1789, it is pertinent and indeed of major importance to ascertain how the English courts were treating with the subject of preferential payments at the time of our severance from the mother country, having particular regard for the year 1789 for the reasons hereinbefore stated.[33]

After examining several English decisions involving preferential transfers the court concluded:

> [T]he English Court of Chancery was not exercising jurisdiction to set aside preferential transfers of personal property prior to 1789, except possibly in cases of equitable assets not subject to levy under 13 Eliz. C. 5, since it was at that time well established that an adequate remedy existed at law and, therefore, no such jurisdiction then attached to our federal courts of equity.[34]

The accuracy of the District Court's review and conclusions was settled the following year with the Supreme Court's decision in *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932). Commenting on then section 267 of the Judicial Code (prohibiting suits in equity where there existed an adequate remedy at law), the Court initially noted:

> It serves to guard the right of trial by jury preserved by the Seventh Amendment and to that end it should be liberally construed.[35]

Based upon numerous English authorities therein cited, the Court went on to observe:

> In England, long prior to the enactment of our first Judiciary Act, common law actions of trover and money had and

---

**31.** See King, *supra* note 30, at 702–08.

**32.** *See,* former § 1480, Title 28 U.S.C. which merely protected jury trial rights provided by statute. *See also* Taggart, *supra* note 23, at 260–61.

**33.** *Lewinson v. Hobart Service Trust Co. of Passaic, N.J.,* 49 F.2d 356, 357 (D.N.J.1931).

**34.** *Id.* at 358.

**35.** *Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 94, 53 S.Ct. 50, 51, 77 L.Ed. 185 (1932).

received were resorted to for the recovery of preferential payments by bankrupts.[36]

Indeed, the Court cautioned:

> [I]n absence of a clear showing that a court of law lacks capacity to give the relief which the allegations show plaintiff entitled to have, a suit in equity cannot be maintained.[37]

Hence, the Court held that a preference action should be tried at law where the relief sought is money damages and no accounting or other equitable relief is sought.

## B

### Fraudulent Conveyances

As early as 1911, the New York Court of Appeals in *Allen v. Gray*, 201 N.Y. 504, 94 N.E. 652 (1911), found jury entitlement in fraudulent conveyance suits seeking legal relief. However, the issue has not been so clearly settled in the federal courts.[38]

In *Lewinson*, supra, although not deciding whether there is jury entitlement in a fraudulent conveyance action, the Court analogized preferences to fraudulent conveyances. In doing so the District Court

provided some useful history of the treatment of the latter under English law, from which our fraudulent conveyance laws have their origin, stating:

> Under the Stat. of 13 Eliz. C. 5, it was not the practice to resort to equity to set aside a fraudulent conveyance. The creditor proceeded as though no conveyance had been made, and execution on his judgment ran against the property with like force and effect as though the transfer had no existence. See Glenn on Creditors Rights and Remedies, page 58.
>
> In commenting on the jurisdiction of equity courts to set aside a fraudulent transfer of goods, Baron Parke said, in the year 1843: "Equity jurisdiction * * * we apprehend has arisen in comparatively modern times." Imray v. Magnay, 152 Eng.Rep. 803. We are not concerned here with the concurrent jurisdiction of equity to set aside fraudulent conveyances of real property, since this forms an interesting subject in itself.[39]

Relying in part on this historical development, one scholarly treatise on the subject

---

**36.** *Id.* (footnote omitted). Actions of trover and money had and received, of course, were actions at law. *See also, Megott v. Mills*, 1 Ld. Raym. 286, 91 Eng.Reprint 1088 (preference action brought in trover to recover goods); *Atkin v. Barwick*, 1 Strange 165, 93 Eng.Reprint 450 (preference action brought in trover to recover goods); *Alderson v. Temple*, 4 Burr. 2235, 98 Eng.Reprint 165 (preference action brought in trover to recover a promissory note); *Harman v. Fishar*, Cowp. pt. 1, p. 117, 98 Eng.Reprint 998 (preference action brought in trover to recover promissory notes); *Rust v. Cooper*, Cowp. pt. 2, p. 629, 98 Eng.Reprint 1277 (preference action brought in trover to recover goods); *Thompson v. Freeman*, 1 T.R. 155, 99 Eng.Reprint 1026 (preference action brought in trover to recover goods); *Barnes v. Freeland*, 6 T.R. 80, 101 Eng. Reprint 447 (preference action brought in trover to recover goods); *Smith v. Payne*, 6 T.R. 152, 101 Eng.Reprint 484 (preference action brought in trover to recover goods); *Nixon v. Jenkins*, 2 H.BL. 135, 126 Eng.Reprint 471 (preference action brought in trover to recover the value of goods transferred); *Marks v. Feldman*, L.R. 5 Q.B. 275 (preference action brought in i) trover to recover goods, and ii) for money had and received to recover the proceeds of the sale of goods transferred); *Cf. Ex Parte Scudamore*, 3 Ves.Jun. 85, 30 Eng.Reprint 907 (Chancellor de-

clined to grant an order directing turnover of funds but directed an action at law to recover money held in trust for a creditor of the bankrupt); *Farrow v. Mayes*, 18 Q.B. 516, 118 Eng. Reprint 195 (assignees in bankruptcy may bring an action for money had and received to recover an amount paid to a creditor of the bankrupt under an execution against the goods of the bankrupt).

**37.** *Schoenthal*, 287 U.S. at 95, 53 S.Ct. at 51.

**38.** *Compare, Whitlock v. Hause*, 694 F.2d 861 (1st Cir.1982) (no right to trial by jury in a fraudulent conveyance action in which the trustee requested two forms of equitable relief or, alternatively, money damages); *Adams v. Jones*, 11 F.2d 759 (5th Cir.1926) (action under sections 60b and 70e of the '98 Act is an action at law. where the trustee requests that the defendant/transferee be ordered to hold money received by him in trust for, and be required to account and pay such money over to, the trustee); *Parker v. Sherman*, 212 Fed. 917 (2d Cir. 1914) (following decisions in other Circuits for the sake of uniformity, the Court held that an action under section 67e of the '98 Act was properly brought in equity "although inclined, had it been a new question, to take a different view").

**39.** *Lewinson*, 49 F.2d at 358.

succinctly describes the lynchpins to decision on the law-equity issue in fraudulent conveyance actions as follows:

> [W]hether the trustee's suit should be at law or in equity is to be judged by the same standards that are applied to any other owner of property which is wrongfully withheld. If the subject matter is a chattel, and is still in the grantee's possession, an action in trover or replevin would be the trustee's remedy; and if the fraudulent transfer was of cash, the trustee's action would be for money had and received. Such actions at law are as available to the trustee to-day as they were in the English courts of long ago. If, on the other hand, the subject matter is land or an intangible, or the trustee needs equitable aid for an accounting or the like, he may invoke the equitable process, and that also is beyond dispute.[40]

The Eleventh Circuit Court of Appeals took essentially this same approach in *In re Graham*, 747 F.2d 1383 (11th Cir.1984) which involved a fraudulent conveyance action under the jurisdictional provisions of the '78 Reform Act. Recognizing that the equity and law courts historically had concurrent jurisdiction over fraudulent conveyance actions and that whether the action was tried at law or in equity depended upon the nature of the relief sought, the Court in *Graham* held that there was no right to a jury trial since the relief requested was equitable in nature, that is, that the conveyance at issue be set aside. In so holding the Court found that the "legal remedy of damages was neither requested nor particularly appropriate because the property conveyed, real property, was not a depreciating asset whose value when returned to the trustee would be substantially less than its value at the time of the subject conveyance."[41]

## CONCLUSION

▮ Unlike the situation in *Graham*, supra, in the present proceeding the transfers and conveyances at issue do not involve non-depreciating property.[42] Moreover, the relief requested is unquestionably legal;[43] the plaintiff seeks money damages as opposed to an accounting or the setting aside of the subject conveyance.[44]

Accordingly, the trial of these issues must be to a jury, in this Court.

So Ordered.

▮

---

**40.** 1 G. Glenn, *Fraudulent Conveyances and Preferences* § 98 (1940) (footnotes omitted).

**41.** *In re Graham*, 747 F.2d 1383, 1388 (11th Cir.1984).

**42.** See supra note 6.

**43.** The plaintiffs have argued that only equitable relief would have been involved if this suit had been tried prior to the sale of the property (to which all parties consented). However, since all of the property involved was either very expensive to maintain or rapidly depreciating in value, the plaintiffs probably could not have been made whole without money damages in addition to the return of the transferred property. At present, of course, only money damages are involved.

**44.** In concluding, the Court must note that it considers the Supreme Court's decisions in *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) in no way to diminish jury trial rights recognized in *Schoenthal*. Additionally, the Court finds that the three part test established by the Supreme Court in *Ross*, for determining the legal nature of an issue, is satisfied. See *Ross*, 396 U.S. at 538 n. 10, 90 S.Ct. at 738 n. 10.