### In re MICHIGAN REAL ESTATE INSURANCE TRUST, Debtor.

Maurice K. CARR as Personal Representative of the Estate of Cecelia F. Carr, Deceased and Maurice K. Carr, individually, Plaintiffs,

v.

MICHIGAN REAL ESTATE INSURANCE TRUST, Republic Hogg Robinson of Michigan, Inc., a Michigan corporation; Penn General Services of Michigan, Inc., a Michigan corporation; Maurice L. Richards, Jr.; Albert F. Pauly; Steven A. Passon; William D. Johnstone; Mel Durbin; John A. Moss; Ronald N. Williams; James A. Smalley; Steve Grajek and Richard Alexsy, jointly and severally, Defendants.

Bankruptcy No. 88–70256.
Adv. P. No. 88–0004.

United States District Court,
E.D. Michigan,
S.D. Detroit.

April 26, 1988.

Darlene A. O'Brien, Sandra L. Sorini, Ann Arbor, Mich., for plaintiffs.

Samuel S. Reiter, Owasso, Mich., for defendant MREIT.

Francis Keating, Saginaw, Mich., for defendants Richards, Pauley, Passon, Johnstone, Durbin, Moss, Williams, Smalley, Grajek and Alexsy.

William G. Jamieson, Susan Tukel, Southfield, for defendants Republic Hogg Robinson of Michigan, Inc., and Penn General Services of Michigan, Inc.

## ORDER WITHDRAWING REFERENCE TO BANKRUPTCY COURT OF THIS ADVERSARY PROCEEDING

HACKETT, District Judge.

 For the reasons stated in the Bankruptcy Judge's report and recommendation regarding various jurisdictional issues, to which no party filed an objection,

IT IS HEREBY ORDERED that the reference of this Court's jurisdiction to the Bankruptcy Court to hear this adversary proceeding, pursuant to 28 U.S.C. § 157(a) is hereby withdrawn. All further proceedings in this adversary proceeding shall occur in the District Court.

## MEMORANDUM OPINION ON DEFENDANTS' MOTIONS TO DISMISS, FOR ABSTENTION, FOR WITHDRAWAL OF REFERENCE AND FOR CHANGE OF VENUE

ARTHUR J. SPECTOR, Bankruptcy Judge.

Michigan Real Estate Insurance Trust (MREIT), was an unincorporated entity funded by voluntary contributions from individuals in the real estate industry in southeastern Michigan for the purpose of reducing the cost of health care for its members. It filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on December 21, 1984.

At the inception of the bankruptcy case we questioned the debtor and the Chapter 7 trustee as to the debtor's eligibility to file a petition for relief since it appeared that the debtor was an insurance company, and so could not qualify under 11 U.S.C. § 109(b)(2). At the hearing, an official from the Michigan Insurance Bureau testified that MREIT was not a domestic insurance company.

Only a "person", as defined by 11 U.S.C. § 101(33) may file a petition under Chapter 7, and trusts were not included in the definition of "person". Therefore, it was also thought that the debtor was not qualified to file a petition in Chapter 7 since it appeared to be a trust. However, both the debtor's and the trustee's attorneys argued that the debtor was not a passive trust, but was a business, or Massachusetts, trust. The plaintiffs have seemingly acquiesced in such a determination.

 A business trust is "an unincorporated business organization created by an instrument by which property is to be held and managed by trustees for the benefit and profit of such persons as may be or may become the holders of transferable certificates evidencing the beneficial interests in the trust's estate." 13 Am.Jur.2d *Business Trusts* § 1; *also see* 12A C.J.S. *Business Trusts* §§ 2 *et seq.; In re Wayson Trust*, 29 B.R. 58, 8 C.B.C.2d 677 (Bankr.D.Md.1982). It is considered a distinct legal entity. *Hemphill v. Orloff,* 238 Mich. 508, 213 N.W. 867 (1927), *aff'd* 277 U.S. 537, 48 S.Ct. 577, 72 L.Ed. 978 (1928) (also holding that the business trust plaintiff was, under Michigan corporations law, a corporation, and so, because it had not registered with the State, was precluded from suing in the Michigan courts). The Bankruptcy Code, § 101(8), includes a business trust in the definition of a "corporation". Therefore, the debtor was found to be qualified to file a petition for relief under Chapter 7.

According to the plaintiff's complaint, Cecelia F. Carr was a participant in MREIT whose premiums for family health insurance coverage were paid up-to-date when she fell ill and eventually died. Her medical expenses for her last illness total $160,716.50. MREIT audited these expenses and approved their payment. Because the claim was in excess of the $30,000 primary coverage within one year, MREIT made a claim for the excess upon Lloyds of London, which reinsured MREIT. Lloyds paid the claim by instructing its agent, defendant Republic Hogg Robinson of Michigan, Inc. (RHR) to issue drafts made payable jointly to MREIT and the specific providers of the medical services to Mrs. Carr. MREIT refused the tender of these drafts

and directed that payment be made solely to it. RHR honored that request. The complaint further alleges, however, that at present, the bankruptcy trustee, Mark C. McCabe, (who is representing the interest of MREIT in this proceeding) is now holding checks from RHR which indicate that the payment should go to the medical care providers. However, the bankruptcy trustee refuses to pay those amounts to, whom the plaintiff contends are, the intended beneficiaries.

In Counts I and II, the plaintiff seeks a determination that the checks held by the bankruptcy trustee are not property of the bankruptcy estate but are held in trust for the benefit of Mrs. Carr's health care providers, and an order compelling the trustee to release those funds to the beneficiaries. In Count III, the plaintiff seeks a determination that the first $900 of its claim has priority under the Bankruptcy Code as one for a consumer deposit, pursuant to 11 U.S.C. § 507(a)(6).

In Count IV, the plaintiff seeks a money judgment against each of the former trustees of MREIT (defendants Richards, Pauly, Passon, Johnstone, Durbin, Moss, Williams, Smalley, Grajek and Alexsy) and the alleged plan administrator, Penn General Services of Michigan, Inc. (Penn General) under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* The plaintiff alleges, among other things, that

> Penn General and defendant trustees each falsely and fraudulently represented to plaintiffs that MREIT was an entity validly organized and legally existing under the laws of the state of Michigan and applicable provisions of federal law ... [and] that the premiums paid by MREIT participants, together with excess insurance coverage, would provide a sufficient fund from which to pay all

medical and hospital claims of ... MREIT participants.

He also alleged [that] "Penn General ... and defendant trustees ... each fraudulently violated a fiduciary duty to plaintiffs by failing to disclose to plaintiffs that defendant Penn General and defendant [RHR] are inter-related companies.... [and] by failing to properly fund and administer the MREIT insurance plan." He further claims that the aforesaid conduct amounted to a "scheme to defraud plaintiffs of their insurance premiums paid and their right to obtain reimbursement of medical and hospital expenses...." He also alleges that the defendants "conspired to violate 18 U.S.C. § 1962(a) ... (b) and ... (c), in violation of 18 U.S.C. § 1962(d)." Finally, he alleges that in perpetration of their scheme, the defendants used the mails and interstate telephone lines and obtained income from a "pattern of racketeering activity".

Count V seeks the imposition of a constructive trust upon those funds received by MREIT from all of its participants' premium payments and on all payments from re-insurance carriers.[1]

In Count VII, the plaintiff seeks a money judgment against Penn General, RHR and MREIT's former trustees for common law negligence. Counts VIII and IX seek a money judgment against the same defendants for fraudulent misrepresentations and for innocent misrepresentations causing the plaintiff damage, respectively.

MREIT's bankruptcy trustee answered the complaint, alleging that the checks were property of the estate not subject to earmarking for the plaintiff's claims. He also brought a cross-claim against defendant Penn General, parroting the negligence allegations contained in the plaintiff's complaint. In addition, the cross-claim added a count seeking the avoidance of an allegedly preferential transfer of $27,075.18 from

---

**1.** The only plaintiff named is Mr. Carr, and he does not seek the designation of a class; therefore, although his standing to seek this relief has not been directly challenged, it is certainly doubtful insofar as he seeks such relief beyond the amount which he claims is due the Carr estate.

Count VI, alleging a breach of contract action against RHR, and presumably MREIT, was subsequently abandoned by the plaintiff, and so no further comment about that theory or count is necessary.

MREIT to Penn General. Finally, the trustee seeks a money judgment against Penn General for breach of its fiduciary duties to MREIT in not disclosing to MREIT the complete details of its self-dealing in purchasing re-insurance coverage from RHR, allegedly its own affiliate.

The former trustees of MREIT moved to dismiss the case as against them for "lack of jurisdiction". They argued that the case against them was not a "core proceeding" as defined by 28 U.S.C. § 157(b),[2] and that since there would be at most a minimal impact on the bankruptcy estate no matter how the action against them was resolved, it is not even a proceeding "related to" the bankruptcy case. Therefore, they argue that this Court lacks jurisdiction to even hear the case, let alone to determine it. In the alternative, they requested the Court to abstain, pursuant to 28 U.S.C. § 1334(c)(1).[3]

In June, 1987, defendants Penn General and RHR also moved to dismiss the plaintiff's claims and the bankruptcy trustee's cross-claims against them, arguing that 28 U.S.C. § 157(b) is unconstitutional and that the actions against them were neither core nor related proceedings and so the bankruptcy court lacked subject matter jurisdiction. They also argued that since they had filed an affirmative defense that the causes of action against them were pre-empted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA), the determination of this action would require consideration of both title 11 and "other laws of the United States regulating organizations or activities affecting interstate commerce", mandating withdrawal of the reference under 28 U.S.C. § 157(d).[4] Alternatively, they also correctly note that they have timely demanded a jury trial of this cause, and therefore this Court ought to exercise its discretion and abstain or else recommend withdrawal of the reference. This argument is apparently premised on the difficulty of accommo-

**2.** 28 U.S.C. § 157(b) states:
(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
(2) Core proceedings include, but are not limited to—
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

**3.** 28 U.S.C. § 1334(c)(1) states:
Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

**4.** 28 U.S.C. § 157(d) states:
The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

dating a proper jury demand in the bankruptcy court.[5]

Finally, Penn General and RHR argue that this proceeding was brought in the wrong court location within the Eastern District of Michigan. They argue that the original bankruptcy case should have been filed in the Detroit administrative unit of the Southern Division of the Eastern District of Michigan in that the debtor's principal office was located in Oakland County, a county which falls within the Detroit administrative unit of the court. Therefore, since this particular adversary proceeding stems from this bankruptcy case which should have been in Detroit, the adversary proceeding should be transferred to Detroit.[6] In the alternative, the defendants argue that it would be more convenient to transfer the case to Detroit since most of the parties are located closer to Detroit than Flint.

Although both the original complaint, which named only the bankruptcy estate as defendant, and the amended complaint, which added the MREIT former trustees, Penn General and RHR as defendants, fail to contain "a short and plain statement of the grounds upon which the court's jurisdiction depends," violating F.R.Civ.P. 8(a), the defendants have not raised nor relied on the technical defect. They have argued lack of jurisdiction on the merits, claiming the lack of bankruptcy jurisdiction to decide the issues in this case. The plaintiff did not argue that the federal district court had RICO jurisdiction (18 U.S.C. § 1964) and so we will determine jurisdiction solely under 28 U.S.C. § 1334. Therefore, any question of "pendent jurisdiction" over Counts VII, VIII and IX arising from arguably valid federal jurisdiction over the RICO count is beyond the scope of this opinion. *See Maislin Ind., U.S., Inc. v. C.J. Van Houton E Zoon, Inc.,* 66 B.R. 614, 617 (E.D.Mich.1986).

## I. CONSTITUTIONALITY OF 28 U.S.C. § 157(b)

■ The statute which provides for the vesting of district court jurisdiction in the bankruptcy units of that court, 28 U.S.C. § 157(b), is constitutional. *In re Mankin,* 823 F.2d 1296 (9th Cir.1987); *In re Koerner,* 800 F.2d 1358 (8th Cir.1986); *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254, 261 (6th Cir.1983) (the interim "Emergency Rule", which was substantially codified as 28 U.S.C. § 157, is constitutional); *In re Ram Construction Co.,* 49 B.R. 363, 13 B.C.D. 279 (W.D.Pa.1985); *In re Tom Carter Ent., Inc.,* 44 B.R. 605, 12 B.C.D. 536, 11 C.B.C.2 1216 (C.D.Cal.1984); *In re Northwest Cinema Corp.,* 49 B.R. 479, 13 B.C.D. 44, 12 C.B.C.2d 1093 (Bankr.D.Minn. 1985); *In re Baldwin–United Corp.,* 48 B.R. 49, 12 B.C.D. 913, 12 C.B.C.2d 378 (Bankr.S.D.Ohio 1985); *In re Goldrich,* 45 B.R. 514, 12 B.C.D. 729, 12 C.B.C.2d 8 (Bankr.E.D.N.Y.1984); *rev'd on other grounds,* 771 F.2d 28 (2nd Cir.1985).

*In re Associated Grocers of Nebraska Co-op, Inc.,* 46 B.R. 173, 12 B.C.D. 737, 12 C.B.C.2d 1 (Bankr.D.Neb.1985), the only case cited for the proposition that this section is unconstitutional, was reversed. 62 B.R. 439, 14 B.C.D. 945, 15 C.B.C.2d 973 (D.Neb.1986).

## II. CORE PROCEEDINGS

■ Since Counts I, II, III and V seek relief against the bankruptcy estate only, and the bankruptcy trustee has not disputed the "core-ness" of these counts, there is no real dispute that these counts allege "core" causes of action. However, it is the bankruptcy judge's duty to determine whether or not a proceeding is a core proceeding. 28 U.S.C. § 157(b)(3). We therefore determine that Counts I, II, III and V of the plaintiff's complaint assert

---

**5.** Local District Court Rule 33(c), dealing with reference of non-core proceedings to bankruptcy judges, does not refer to the bankruptcy court the duty of presiding over jury trials without the express consent of all of the parties, which these defendants have obviously declined to give. *Also see,* n. 12.

**6.** Assuming the defendants are correct in the assertion that the bankruptcy case itself was improperly venued in the Flint administrative unit of the Southern Division of the Eastern District of Michigan, the proper relief would apparently be to transfer the entire case as well as this adversary proceeding to Detroit.

matters which are all core proceedings. 28 U.S.C. § 157(b)(2)(B), (K) and (O).

Likewise, the bankruptcy trustee's cross-claim against Penn General seeking the avoidance of an alleged preference is clearly a core proceeding. 28 U.S.C. § 157(b)(2)(F).

## III. JURISDICTION OF THE REMAIN-ING COUNTS OF THE COMPLAINT AND OF THE CROSS–CLAIM

 The trustee's cross-claim asserts two common law causes of action against Penn General. Such causes of action, whether or not substantively valid, are property of the estate. 11 U.S.C. § 541(a)(1). *See generally In re Whiting Pools, Inc.*, 462 U.S. 198, n. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1984); *In re Crevier*, 820 F.2d 1553 (9th Cir.1987); *Wayne Film Systems Corp. v. Film Recovery Systems Corp.*, 64 B.R. 45, 49, 51, 15 C.B.C.2d 1065 (N.D.Ill.1986); *In re DeLorean Motor Co.*, 49 B.R. 900, 908, 13 B.C.D. 60, 13 C.B.C.2d 339 (Bankr.E.D.Mich.1985); 4 *Collier on Bankruptcy*, ¶ 541.10 (15th ed. 1987). When the trustee brings suit to enforce his rights under a cause of action possessed by the debtor, he is, in essence, liquidating the asset. However, when the cause of action is itself a creature of state law, as the claims sounding in negligence and breach of fiduciary duty clearly are, the bankruptcy court may not constitutionally enter a judgment over the objection of the non-debtor defendant. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *In re Atlas Automation, Inc.*, 42 B.R. 246 (Bankr.E.D.Mich.1984).

 The trustee's cross-claims against Penn General based on negligence and breach of fiduciary duty are not core pro-ceedings; they are, however, "otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1). *In re Globe Parcel Service, Inc.*, 75 B.R. 381 (E.D.Pa.1987); *In re Nanodata Computer Corp.*, 74 B.R. 766 (N.D.N.Y.1987); *In re Environmental Research & Development, Inc.*, 46 B.R. 774, 779, 12 B.C.D. 1333, 12 C.B.C.2d 1296 (S.D. N.Y.1985); *In re STN Ent., Inc.*, 73 B.R. 470, 484 (Bankr.D.Vt.1985); *In re Guenther*, 65 B.R. 650, 15 B.C.D. 63 (Bankr.D. Colo.1986); *In re World Financial Services Center, Inc.*, 64 B.R. 980, 14 B.C.D. 1306, 15 C.B.C.2d 836 (Bankr.S.D.Cal.1986); *In re Southern Industrial Banking Corp.*, 49 B.R. 811 (Bankr.E.D.Tenn.1985); *In re Morse Electric Co.*, 47 B.R. 234, 12 B.C.D. 957 (Bankr.N.D.Ind.1985); *contra In re DeLorean Motor Co.*, 49 B.R. at 909. They are, therefore, well within the subject matter jurisdiction of the district court to determine, 28 U.S.C. § 1334(b), and the bankruptcy court to hear. 28 U.S.C. § 157(c); *In re Hardwicke Cos.*, 64 B.R. 113 (S.D.N.Y.1986). Since all parties have not consented to the entry of a judgment on these causes of action by the bankruptcy court, if these theories are heard here at all, it will require the Court to enter proposed findings of fact and conclusions of law for submission to the district judge. 28 U.S.C. § 157(c)(1).[7]

For the same reason, Counts IV, VII, VIII and IX of the plaintiff's complaint are not core proceedings. As to those counts, the bankruptcy estate is neither a plaintiff nor a defendant. Furthermore, these counts assert demands for money judgments based entirely on legal theories outside the parameters of the Bankruptcy Code. Because the estate is not even a party to these counts, the real question here is whether federal jurisdiction under the bankruptcy font, 28 U.S.C. § 1334, exists at all.[8]

---

7. However, it is important to note that a jury trial of these causes of action has been demanded, and that such a demand complicates this issue considerably.

8. 28 U.S.C. § 1334(a) and (b) states:
 (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

 (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

It exists as to these counts of RICO (Count IV), negligence (Count VII), and misrepresentation (Counts VIII and IX), only if they qualify as "civil proceedings arising in or related to cases under title 11." 28 U.S.C. § 1334(b). In *In re Wood*, 825 F.2d 90 (5th Cir.1987), the Fifth Circuit Court of Appeals held that bankruptcy jurisdiction existed over parties like the MREIT former trustees, Penn General and RHR under certain circumstances. It noted that "in filing the complaint, the plaintiff challenged the combined actions of both the debtors and Barham, a non-debtor. Resolution of the dispute will necessarily involve, therefore, consideration of Barham's involvement in those actions." Moreover, the *Wood* court drew "support in the Court of Appeals for the Sixth Circuit and lower courts, which have held that when the plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334." *Wood*, 825 F.2d at 94.

The Sixth Circuit decision referred to was *In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir.1986). *Salem* noted that courts have developed different tests to determine whether subject matter jurisdiction exists, and held "that a broader interpretation of the statute more closely reflect[ed] the congressional intent in adopting the new bankruptcy laws." It explained that: "The emphatic terms in which the jurisdictional grant is described in the legislative history, and the extraordinary broad wording of the grant itself, leave us with no doubt that Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases." *See In re Maislin Ind., U.S., Inc.*, 75 B.R. 170 (Bankr.E.D.Mich.1987).

In *Salem*, the court held that a lawsuit by one non-estate[9] party (in that case the

Attorney General of the State of Michigan) against a large number of other non-estate parties (including individuals and trusts that invested in the debtor's inventory of residential mortgages), was within the bankruptcy jurisdiction of the federal court. The parties had negotiated a complex settlement of their disputes which the bankruptcy court approved. It recommended entry of the consent judgment, but the district court held that the federal court lacked subject matter jurisdiction over the proceeding. The Court of Appeals found that the parties were sufficiently intertwined with each other and with the underlying mortgage transactions with the debtor to provide a nexus to the bankruptcy case. It also noted that part of the settlement would provide for the allowance of certain claims against the bankruptcy estate. It therefore held that the dispute was "sufficiently related to the estate of the bankrupt such that the district court had jurisdiction over the subject matter under 28 U.S.C. § 1471, now 28 U.S.C. § 1334, and thus [the district court] improperly dismissed the proceeding." *Id.* at 634.

■ Although the complaint does not assert liability against the bankruptcy estate on grounds of RICO, negligence or misrepresentation, it is obvious that the named defendants' conduct is inextricably intertwined with the debtor. *Compare In re DeLorean Motor Co., supra.* Neither *Salem* nor *Wood* requires that the estate be a party to each count of the complaint. The RICO count alleges a conspiracy between the debtor by and through its former trustees and Penn General to defraud the plaintiff, and that the conspiracy was part of a pattern of racketeering activity. As the parties' only relationship with one another radiates from the debtor, the actions of the debtor are central in the determination of

---

**9.** We prefer this term to the more common appellation "non-debtor" because when a debtor sues in most of these cases, it is doing so as a "debtor in possession" i.e., a trustee. 11 U.S.C. § 1104. Indeed, when a debtor sues on a cause of action which will bring no conceivable benefit to the bankruptcy estate, there is arguably, just as little basis for bankruptcy jurisdiction as when two creditors sue each other in the bankruptcy court. It is really the bankruptcy estate's interest which is paramount. *See In re Wood*, 825 F.2d 90, 94 (5th Cir.1987) ("To fall within the court's jurisdiction, the plaintiff's claim must affect the estate, not just the debtor."). *In re Cemetery Development Corp.*, 59 B.R. 115, 121, n. 13, 14 B.C.D. 306, 14 C.B.C.2d 980 (Bankr.M.D.La.1986).

this cause of action. The negligence and misrepresentation theories also allege actions and omissions which arise from the parties' interrelationships with the debtor. The debtor, in essence, formed a conduit connecting up the trustees, Penn General, RHR and the plaintiff. They form a completed circuit: remove the debtor from the picture, and "juice" would not flow from the defendants to the plaintiff. While we feel that the circumstances of this case are similar in that respect to *Salem*, the determination of whether the RICO, negligence and misrepresentation counts are within the broad bankruptcy jurisdiction of the district court is more difficult to determine. After all, in *Salem*, the Court of Appeals expressly found that the proposed settlement provided for the allowance of certain claims against the estate. Clearly, then, the comments about the parties being intertwined aside, bankruptcy jurisdiction existed simply because of the factor of the allowance of claims against the estate.

A stockholder's derivative action is a lawsuit brought by a stockholder for the benefit of the corporation. The repository of any recovery under such a theory is the corporation itself, or, if the corporation is in bankruptcy, then the corporation's bankruptcy trustee. *Delgado Oil Co. v. Torres*, 785 F.2d 857, 860 (10th Cir.1986); *Mitchell Excavators, Inc. v. Mitchell*, 734 F.2d 129, 131 (2nd Cir.1984). The defendants' motions to dismiss did not argue that the

plaintiff lacked standing and so we express no opinion on that point. However, the question is certainly relevant to determining whether the case fits within the bankruptcy jurisdiction of the federal courts. If Counts IV, VII, VIII and IX are for the benefit of the bankruptcy estate, then, of course, their outcome would certainly affect the estate. Consequently, it would be well within the bankruptcy jurisdiction of the federal court. On the other hand, if these counts are really for the sole benefit of the plaintiff for injuries suffered by him directly, then a closer look is warranted in determining whether there exists bankruptcy jurisdiction to hear them.

In Count IV, the plaintiff seeks a money judgment against Penn General and the MREIT former trustees on the basis of alleged RICO Act violations. Although the count seemingly alleges that the plaintiff was injured as a result of the defendants' improper acts and omissions, the gravamen of that count is stated most succinctly in paragraph 37: "Defendant Penn General, as MREIT's plan administrator and defendant trustees, as officers, directors and trustees of MREIT, each fraudulently violated a fiduciary duty to plaintiffs by failing to properly fund and administer the MREIT insurance plan." Such an allegation asserts injury to the plaintiffs only derivatively [10] through MREIT, for if the defendants had properly funded and admin-

**10.** Although no Michigan case can be found directly on point, it is generally held that an action by a "shareholder" of a business trust challenging actions of the trustees must be filed in the same way as a stockholder's derivative action under corporations law. 12A C.J.S. *Business Trusts* § 47; 13 Am. Jur.2d *Business Trusts* § 105. Michigan would likely follow the general rule since it implied such a procedure for limited partnerships. *See Jaffe v. Harris*, 109 Mich.App. 786, 312 N.W.2d 381 (1981). From the complaint, it would appear that Mrs. Carr, although denominated a "participant", held the same status, effectively, as a stockholder in a traditional corporation.

The first case which held that a stockholder who seeks to recover for injuries to his corporation caused by RICO Act violations by others has standing to sue only in a derivative action was decided by the Court of Appeals of our own circuit. In a well-respected opinion, the court stated:

In his capacity as a shareholder of Paragon, any injury he incurred was actually one sustained by the corporation.

"An action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation. The shareholder's rights are merely derivative and can be asserted only through the corporation. Although this rule does not apply in a case where the shareholder shows a violation of duty owed directly to him, dimunition (sic) in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right."

*Warren v. Manufacturers Nat. Bank of Detroit*, 759 F.2d 542, 544 (6th Cir.1985) (quoting *Stevens v. Lowder*, 643 F.2d 1078, 1080 (5th Cir. 1981)); *accord Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843 (2nd Cir.1986); *Small v. Goldman*, 637 F.Supp. 1030 (D.N.J.1986); *Crocker v. McMullan*, 623 F.Supp. 963 (S.D.Miss.1985).

istered the plan, MREIT would have remained solvent and all participants would have benefited alike.

Count VII, alleging the former MREIT trustees' negligence as well as the negligence of defendants Penn General and RHR is even more complicated. With respect to the former trustees, the plaintiff alleged that they "owed a duty to plaintiffs to exercise reasonable care and diligence to ensure that the MREIT Plan was properly funded, efficiently administered, legally organized and otherwise operated in the best interest of plaintiffs and other plan beneficiaries." Paragraph 64. The count also alleged that "defendant Penn General owed a duty to plaintiffs to exercise reasonable care and diligence in its administration and supervision of the MREIT Plan." Paragraph 65. To the extent that Penn General and the former trustees owed duties to the plaintiff to properly fund and administer the MREIT Plan, it is obvious they owed the same duty to all other plan participants. Their duty seemingly ran to the plan and only indirectly to the plan participants. Accordingly, it would appear that this too would be a derivative action. (Remember that in this case, the bankruptcy trustee has sued Penn General on a similar theory.)

With respect to RHR, Count VII alleged that "defendant Republic Hogg owed a duty to plaintiffs to exercise reasonable care and diligence in processing excess reinsurance claims, making payments for the MREIT Plan and issuing re-insurance drafts." Paragraph 66. Once again, it would appear that whatever duty RHR owed to the plaintiff was part and parcel of its duty to and through MREIT; therefore, the action would appear to be derivative in nature.

Counts VIII and IX, alleging intentional and unintentional misrepresentation by the former trustees, Penn General and RHR, set up alleged specific representations by the defendants to the Carrs that "the premiums paid by MREIT participants together with excess insurance coverage were sufficient to pay all medical and hospital benefits due to plaintiffs under the MREIT Plan" and that the plan was legal and was properly administered. Paragraphs 72–74. It is a close question whether Counts VIII and IX state causes of action for injury done directly to the plaintiff or flow to him only through the MREIT plan. Since we are unable to say confidently that these counts set up a derivative cause of action, we feel that should the plaintiff prove liability under Counts VIII and IX, it would likely inure to his sole and direct benefit and not pass to him indirectly through the bankruptcy estate.

The plaintiff has alleged no potential benefit to the bankruptcy estate flowing from a finding of liability under Counts IV, VII, VIII or IX, other than to decrease his own claim against the estate. The defendants have not claimed that if they eventually were required to pay a judgment under any of the tort theories alleged against them that they would then be subrogated to the plaintiff's claim against the estate. Therefore, if the plaintiff's claim against the estate would in fact be reduced if he is able to collect from these other parties, then there may indeed be some conceivable effect upon the bankruptcy estate from the determination of these counts of the adversary proceeding. Apparently, then, we have here both ingredients found in *Salem:* the substantial intertwining of the parties' relationships with the debtor and the effect of the claims allowance process against the estate. Therefore, it would appear that whether or not the plaintiffs' claims under Counts IV, VII, VIII and IX are derivative, there would be bankruptcy jurisdiction to try them in the federal court.

In *In re McRae Fire Protection, Inc.,* 49 B.R. 773, 13 B.C.D. 57 (Bankr.E.D.Mich. 1985), Bankruptcy Judge Graves found bankruptcy jurisdiction over a third party plaintiff's action against a third-party defendant under these circumstances. The debtor in possession sued Joseph Davis, Inc. (JDI) for payments due it under a contract pursuant to which McRae performed construction work at Epcot Center in Florida. JDI, in turn, had been hired by R.E. Dailey Co., the general contractor for Walt Disney World Co., the owner of the project. United States Fidelity & Guaranty

Co. (USF & G) provided the labor and material bond for the project. JDI impleaded the other three parties for what it felt was due under its subcontract with Dailey, for unjust enrichment by Disney, and to collect on the surety bond from USF & G. These parties moved to dismiss the case, arguing that there was no bankruptcy jurisdiction. Judge Graves held that:

> If the JDI claim for full or partial reimbursement against Dailey is dismissed payment to McRae is affected directly. A finding of no liability against Dailey releases USF & G from any obligation to JDI and forecloses McRae's ability to recover from JDI. If, on the other hand, Dailey is liable for all or part of payment owed to McRae, USF & G is obligated to pay consistent with the terms of the bond and a major asset of the debtor is returned to the estate. Disney was the benefactor of the JDI/McRae contract. JDI's action against Disney is based on unjust enrichment. To the extent shown, any damage award passes to McRae. Based on the above, we find the third-party action has an effect on the estate and the parties are "necessary" to a full, proper reorganization of the Debtor.

49 B.R. at 778. The *McRae* theory was the inverse of the situation in *Salem*. In *Salem*, the litigation resulted in the allowance of certain claims against the estate. In *McRae*, the third-party action could conceivably result in making available a pot of money for the estate.

In *In re Maislin Ind., U.S., Inc., supra,* Judge Rhodes rejected the third-party plaintiff's argument that its third-party indemnity complaint was within the federal court's bankruptcy jurisdiction. The third-party plaintiff argued that if it "prevails in the third party action, it is likely to obtain a judgment against AT & T in the same amount MAISLIN would receive if successful in the primary action. Accordingly, the proceeds from the judgment against AT & T would be available for immediate attachment and satisfaction of MAISLIN's judgment." *Id.* at 173. The court distinguished *McRae* and noted that nothing suggested that the third-party plaintiff in *Maislin* would need to collect the judgment against AT & T in order to have the funds to pay any judgment Maislin may obtain against it. Apparently, the difference between the two opinions is that Judge Graves felt that a recovery by the third-party plaintiff subcontractor in *McRae* against the bonding company, the general contractor and/or the owner of the project was necessary in order for it to be able to pay any judgment obtained by the debtor in possession against it, while Judge Rhodes could not make such a finding in *Maislin.*

In *In re Earl Roggenbuck Farms, Inc.,* 51 B.R. 913, 925 (Bankr.E.D.Mich.1985), we held that a defendant's cross-claim against the debtor's former director, officer and shareholder was within the bankruptcy jurisdiction of the court because if we found, as cross-plaintiff CCC alleged, that Mr. Roggenbuck had

> ... made false representations to the CCC which caused it to make a sizable loan to him ... then he might be individually liable to the CCC for the tort of misrepresentation. At the same time, and as a consequence of this very same factual determination, the CCC might have been entitled to trace the proceeds of that loan into the debtor's bankruptcy estate and successfully assert a constructive trust on those proceedings. Such a finding would result in a substantial diminution of the estate. On the other hand, a finding that no misrepresentation occurred would result in a judgment in the principal action adverse to the CCC; however, it would still be possible that the CCC would succeed against Roggenbuck individually, this time on a straight contract theory. Alternatively, it is possible that Roggenbuck's theory that he told the CCC that it was the corporation and not he that was borrowing the money would be accepted as true, in which case, the CCC may not have any claim against him, but instead have an unsecured claim against the estate. Thus, the principal factual issue in this case could have had a material and substantial effect upon the administration of the bankruptcy case.

(Footnotes omitted). *Also see In re L.B. Trucking, Inc.*, 75 B.R. 88 (Bankr.D.Del. 1987).

■ What these cases stand for is the proposition that if the bankruptcy estate could suffer any conceivable benefit or detriment as a result of the determination of the adversary proceeding, then bankruptcy jurisdiction exists. The benefit can take the form of disallowance of claims against the estate or the actual recovery of assets; the detriment can take the form of either the allowance of claims against the estate or the potential loss of assets due to any number of theories, including the imposition of a constructive trust.

The strongest case we could find for the opposite conclusion is *Wayne Film Systems Corp. v. Film Recovery Systems Corp., supra.* There, the district court recognized that the creditor/plaintiff realized that its Chapter 7 debtor had few assets, and so it attempted to extend liability to the debtor's officers, directors and shareholders under various theories, including RICO. The court found that since the plaintiff's action against these non-debtor, non-estate defendants was for the sole benefit of the plaintiff, the bankruptcy estate would not have been affected by its outcome. Therefore, it held that no bankruptcy jurisdiction existed over the case. However, the plaintiff there did not argue that to the extent it could recover against the third parties on its tort or RICO actions it would reduce its claim against the bankruptcy estate *pro tanto.* Therefore, this case does not properly stand for the proposition that such a conceivable effect on the estate is insufficient to sustain bankruptcy jurisdiction. Furthermore, even if it clearly so held, such a holding would not be in accordance with *Salem,* which, of course, is binding on this Court.

Therefore, we believe that whether the RICO, negligence and misrepresentation counts are for the sole and direct benefit of the plaintiff or are instead derivative in nature does not change the result on the question of bankruptcy jurisdiction: in either case, we believe these counts are within the bankruptcy jurisdiction of the federal court.

Moreover, as noted before, the bankruptcy trustee has sued Penn General on similar common law theories. There is no doubt that bankruptcy jurisdiction exists when the bankruptcy trustee sues an entity to collect for that entity's tortious conduct which allegedly injured the debtor. To the extent the plaintiff's Counts VII, VIII and IX against Penn General seek independent damages apart from what the trustee would recover, it would appear that such a count is within this Court's ancillary jurisdiction.

In a recent case, *Charles Taunt, Trustee v. Fidelity Bank of Michigan, (In re Petrolia Corp.),* 79 B.R. 686 (Bankr.E.D.Mich. 1987), Judge Rhodes exhaustively studied the doctrine of ancillary jurisdiction as it relates to bankruptcy jurisdiction of the federal court. We agree with everything stated therein, and believe that ancillary jurisdiction also supports maintaining the plaintiff's action against Penn General. *Also see In re Lanciaux,* 76 B.R. 254, 256 (Bankr.D.R.I.1987); *In re Ross,* 64 B.R. 829, 834, 14 B.C.D. 1231, 15 C.B.C.2d 698 (Bankr.S.D.N.Y.1986); *In re Yagow,* 53 B.R. 737, 13 B.C.D. 847, 848 (Bankr.D.N.D. 1985); *In re Roggenbuck Farms, Inc.,* 51 B.R. at 925–926.

## MANDATORY WITHDRAWAL OF REFERENCE

In *In re White Motor Corp.,* 42 B.R. 693, 703–704, 12 B.C.D. 235, 11 C.B.C.2d 993 (N.D.Ohio 1984), District Judge Aldrich stated what has become the test for determining whether the reference must be withdrawn. She said:

Section 157(d) must therefore be read to require withdrawal not simply whenever non-Code federal statutes will be *considered* but rather only when such consideration is necessary for the *resolution* of a case or proceeding. The preceding analysis of legislative history and the Code's structure demonstrates the importance of the observations during the House debate that section 157(d) was not intended to become "an escape hatch

through which most bankruptcy matters will be removed to the district court", *supra* at 13, and in the Senate debate that district courts "should not allow a party to use this provision to require withdrawal where such laws are not material to the resolution of the proceeding." *Id.* at 14. Consequently, in light of the Congressional goal of having expert bankruptcy judges determine complex Code matters to the greatest extent possible, PBGC's motion to withdraw reference should be granted only if the current proceedings before the Bankruptcy Court can not be resolved without *substantial and material consideration* of ERISA and IRC provisions.

*Accord In re Combustion Equipment Assoc., Inc.*, 67 B.R. 709, 16 C.B.C.2d 1208 (S.D.N.Y.1986); *In re Johns–Manville Corp.*, 63 B.R. 600 (S.D.N.Y.1986); *Tedesco v. Mishkin*, 53 B.R. 120 (S.D.N.Y.1985); *United States v. ILCO, Inc.*, 48 B.R. 1016 (N.D. Ala.1985); *Michigan Milk Producers Assoc. v. Hunter*, 46 B.R. 214, 12 C.B.C.2d 166 (N.D. Ohio 1985); *In re Baldwin–United Corp.*, 47 B.R. 898, 10 C.B.C.2d 273 (S.D. Ohio 1984); *also see Burger King Corp. v. B–K of Kansas, Inc.*, 64 B.R. 728 (D.Kan.1986); *In re Maislin Ind., U.S., Inc.*, 50 B.R. 943, 13 B.C.D. 188, 13 C.B.C. 2d 316 (Bankr. E.D.Mich.1985).

Here, although RHR and Penn General state that ERISA controls, they have not raised any substantial issue of ERISA pre-emption. They have not explained *why* ERISA has any relationship whatsoever to this case. The party alleging mandatory withdrawal of reference, as the moving party, has the initial burden of going forward to show that the grounds for such a motion are established, and ultimately the risk of non-persuasion. *Tedesco v. Mishkin, supra; In re White Motor Corp., supra; In re Baldwin–United Corp., supra.* The mere recitation of a section from the U.S. Code with the bald assertion that somehow it applies is insufficient to maintain the burden of proof on the motion. The trustee and the plaintiff have adamantly contended that MREIT never qualified under ERISA and therefore the terms of ERISA are entirely outside

the scope of this proceeding. Penn General and RHR have not responded to this contention. Therefore the movants have not established that there is a *substantial* and *material* issue under ERISA in this case.

Furthermore, in order to find that the reference must be withdrawn, the court must also find that the case requires substantial and material consideration of title 11. *In re Anthony Tammaro, Inc.*, 56 B.R. 999 (D.N.J.1986). The counts by the plaintiff against Penn General and RHR do not arise out of title 11 but are either of state origin or of other federal origin (RICO). This case differs from *In re Hartley*, 55 B.R. 781, 13 B.C.D. 1132, 13 C.B.C.2d 1267 (Bankr.N.D.Ohio 1985), where the court found that the trustee's five-count complaint against a bank alleging fraudulent transfers, preferences and RICO, was subject to mandatory withdrawal of reference. Here, the preference action is brought by the trustee, who alleges no cause of action involving interstate commerce, and the RICO count is brought by Mr. Carr, who alleges no title 11 claim as against the RICO defendants. Title 11 and interstate commerce issues with respect to RICO are not intertwined in this case. Therefore, we have neither ground for the imposition of mandatory withdrawal of reference.

## DISCRETIONARY ABSTENTION, WITHDRAWAL OF REFERENCE, JURY TRIAL

As we noted earlier, *see* n. 7, Penn General and RHR, as well as the former MREIT trustees have all demanded a jury trial of this cause. However, a party may be entitled to a jury trial of certain causes of action while not being entitled to a jury trial of other causes of action. Once again, therefore, it is necessary to go through the complaint and cross-claim count by count to determine whether the right to jury trial exists.

As Counts I, II, III and V seek relief only against the bankruptcy estate and the trustee has not requested a jury trial, we

need not concern ourselves with those counts. Count IV, as against the former trustees and Penn General, (the RICO count) is clearly one in which the defendants are entitled to a jury trial. U.S. Const. Amend. VII [11]; *NSC Intern. Corp. v. Ryan*, 531 F.Supp. 362 (N.D. Ill.1981). Counts VII (negligence), VIII and IX (misrepresentation) state causes of action which, under Michigan law, entitle the defendants to a jury trial.

The source of the right to a jury trial in a state-law governed federal court case has been a much discussed constitutional issue. "Though there had been some divergence of opinion on this point, it is now wholly clear that the right of jury trial in federal court is governed entirely by federal law, and that state law may be disregarded." C. Wright, *Law of Federal Courts*, § 92, p. 606 (1983). The Supreme Court has also clarified that "the right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions. The federal policy favoring jury trials is of historic and continuing strength." *Simler v. Conner*, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691, 693 (1963).

As has been frequently noted,[12] when a party properly requests a jury trial of a non-core proceeding, an insoluble jurisdictional mess occurs in the bankruptcy court. Although, absent a jury demand, the bankruptcy judge can hear the case and recommend findings of fact and conclusions of law to the district judge for entry of judgment, that procedure is worse than useless when a jury trial is appropriately requested. The applicable provision states: "In such proceeding, the *bankruptcy judge* shall submit proposed findings of fact and conclusions of law to the district court ..." 28 U.S.C. § 157(c)(1) (emphasis added). If the bankruptcy judge were to impanel a jury, the judge could not enter findings of fact and conclusions of law since the jury would have made those determinations in the form of a verdict. The only way a jury trial can fit within the § 157(c)(1) procedure is if the bankruptcy judge impanels a jury, receives the verdict, submits the verdict to the district judge with a recommendation that the jury verdict be adopted and that a judgment be entered by the district judge. However, by use of this sleight of hand, one does not pay sufficient heed to the mandatory nature of the bankruptcy judge's duty to submit his own proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1). The only real way that a jury trial can be conducted in the bankruptcy court while being true to the mandatory language of 28 U.S.C. § 157(c)(1), is "with the consent of all the parties to the proceeding." § 157(c)(2).[13] Then, the bankruptcy judge

---

**11.** The Seventh Amendment to the United States Constitution states:

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

**12.** Many cases have noted the impracticality of holding jury trials in non-core proceedings in bankruptcy court. *See, e.g., In re Globe Parcel Service, Inc.,* 75 B.R. 381 (E.D.Pa.1987); *M & E Contractors v. Kugler–Morris General Contractors,* 67 B.R. 260, 268 (N.D.Tex.1986); *In re George Woloch Co.,* 49 B.R. 68 (E.D.Pa.1985); *Macon Prestressed Concrete Co. v. Duke,* 46 B.R. 727, 730, 12 B.C.D. 1284 (M.D.Ga.1985); *Mohawk Ind., Inc. v. Robinson Ind., Inc.,* 46 B.R. 464, 466, 12 B.C.D. 891, 12 C.B.C.2d 560 (D.Mass.1985); *In re River Oaks Homes, Inc.,* 76 B.R. 182, 16 B.C.D. 240 (Bankr.N.D.Ala.1987); *Acolyte Electric Corp. v. City of New York,* 69

B.R. 155 (Bankr.E.D.N.Y.1986); *In re Reda, Inc., supra; In re Arnold Print Works, Inc.,* 54 B.R. 562, 13 B.C.D. 883 (Bankr.D.Mass.1985), *aff'd in part* and *rev'd in part* 61 B.R. 520, 15 C.B.C.2d 265 (D.C.Mass.1986); *In re Northern Design, Inc.,* 53 B.R. 25 (Bankr.D.Vt.1985); *In re Mauldin,* 52 B.R. 838, 841, 13 B.C.D. 603 (Bankr.N.D. Miss.1985); *In re U.S. Bedding Co.,* 52 B.R. 875, 878 (Bankr.C.D.Cal.1985); *In re L.A. Clarke and Son, Inc.,* 51 B.R. 31, 13 B.C.D. 452 (Bankr.D.D. C.1985); *In re American Energy, Inc.,* 50 B.R. 175, 180–181, 13 B.C.D. 200, 13 C.B.C.2d 232 (Bankr.D.N.D.1985); *In re Morse Electric Co.,* 47 B.R. 234, 238–239, 12 B.C.D. 957 (Bankr.N.D. Ind.1985); *In re Smith–Douglass, Inc.,* 43 B.R. 616, 12 B.C.D. 426, 11 C.B.C.2d 798 (Bankr.E.D. N.C.1984); *In re Atlas Automation, Inc.,* 42 B.R. 246 (Bankr.E.D.Mich.1984).

**13.** 28 U.S.C. § 157(c)(2) states:

Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceed-

can receive the jury's verdict and enter the judgment himself. In this case, obviously, no party has expressly consented to the holding of a jury trial in the bankruptcy court, and an objection to such procedure can fairly be read from the motions filed. Therefore, it would be unwieldy, if not illegal, for the bankruptcy court to host a jury trial of those non-core causes of action in this case which require the holding of a jury trial. *See* n. 12; *contra, In re Price–Watson Co.*, 66 B.R. 144, 15 B.C.D. 72, 80–82, 16 C.B.C.2d 1552 (Bankr.S.D.Tex. 1986). Obviously, then, another court must be found to try these causes of action.

■ Penn General has also sought a jury trial of the trustee's cross-claim against it for the recovery of an alleged preference. As this count is clearly a core proceeding, the question is squarely presented as to whether a complaint by a bankruptcy trustee for the recovery of a money judgment on account of an alleged preference entitles the defendant to a jury trial.

In *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 94–95, 53 S.Ct. 50, 51–52, 77 L.Ed. 185 (1932), the Supreme Court held that a bankruptcy trustee's suit to recover a money judgment arising from an allegedly voidable preference is indistinguishable from all other cases in which one civil party seeks a money judgment from another civil party. The Court stated that:

> In England, long prior to the enactment of our first Judiciary Act, common law actions of trover and money had and received were resorted to for the recovery of preferential payments by bankrupts. Suits to recover preferences constitute no part of the proceedings in bankruptcy but concern controversies arising out of it.... They may be brought in the state courts as well as in the bankruptcy courts. The question whether remedy must be by action at law or may be pursued in equity notwithstanding objection by defendant depends upon the facts stated in the bill. And, in

absence of a clear showing that a court of law lacks capacity to give the relief which the allegations show plaintiff entitled to have, a suit in equity cannot be maintained.

(Citations and footnote omitted).

An exception to this rule of constitutional law was made in *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). The Court there held that by filing a proof of claim in an effort to obtain a dividend from the estate, a creditor thereby subjects itself to the summary jurisdiction of the bankruptcy court, including the power to order the return of monies received as a preference. Therefore, in that case, since the creditor had submitted himself willingly to the summary (read that as non-jury) jurisdiction of the bankruptcy court, the Supreme Court determined that the defendant was not entitled to a jury trial.

Quite a few cases have read *Katchen* to mean that all bankruptcy jurisdiction is "summary jurisdiction". *See e.g. In re Hendon Pools of Michigan, Inc.*, 57 B.R. 801 (E.D.Mich.1986); *In re Republic Financial Corp.*, 77 B.R. 840 (Bankr.N.D. Okla.1987); *In re Southern Industrial Banking Corp.*, 66 B.R. 370, 15 B.C.D. 249, 15 C.B.C.2d 1036 (Bankr.E.D.Tenn.1986); *In re Reda, Inc.*, 60 B.R. 178, 14 B.C.D. 462 (Bankr.N.D.Ill.1986); *In re Duncan*, 51 B.R. 71, 13 B.C.D. 229 (Bankr.D.Md.1985); *In re Lee*, 50 B.R. 683, 13 B.C.D. 215 (Bankr.D.Md.1985); *In re O'Bannon*, 49 B.R. 763, 765–766, 13 B.C.D. 49 (Bankr.M. D.La.1985); *In re Baldwin–United Corp.*, 48 B.R. 49, 12 B.C.D. 913, 12 C.B.C.2d 378 (Bankr.N.D.Ohio 1985); *In re Best Pack Seafood, Inc.*, 45 B.R. 194 (Bankr.D.Me. 1984). However, when Congress enacted the present Bankruptcy Code in 1978, it intended to, and did, broaden the jurisdictional scope of the bankruptcy courts. Therefore, although it might be properly argued that the bankruptcy courts prior to October 1, 1979 had summary jurisdiction

---

ing, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate or-

ders and judgments, subject to review under section 158 of this title.

and that only,[14] it is not necessarily true that the bankruptcy courts under the Bankruptcy Code have as limited a jurisdictional grant.

The premise that no jury trial need be considered by the bankruptcy court because all bankruptcy matters are "inherently equitable" can be traced ... to an overbroad reading of *Katchen v. Landy*.... *Katchen* was decided under the 1898 act, in which bankruptcy courts possessed only summary jurisdiction; it cannot be read for the proposition that all core proceedings are, by definition, equitable. To ascertain whether the seventh amendment attaches, reference must be made to the common law at the time of the adoption of the amendment, "legal claims are not magically converted into equitable issues by the presentation to a court of equity". Congress cannot transform a legal proceeding into an equitable proceeding and thus abrogate the terms of a constitutional provision. *Fleitmann v. Welsbach St. Lighting Co.*, 240 U.S. 27, 36 S.Ct. 233, 60 L.Ed. 505 (1916); ... A litigant does not abandon constitutional protection simply because the proceedings are in a bankruptcy court.

*M & E Contractors v. Kugler–Morris General Contractors*, 67 B.R. 260, 265–267 (N.D.Tex.1986) (some citations omitted). This case further explained:

Just as Congress cannot vest jurisdiction in a court that cannot receive it, it cannot limit the seventh amendment right to a jury trial. For this reason, any portions of the Bankruptcy Amendments Act that limit the right to jury trial must be read narrowly to save them from a finding of constitutional infirmity. The necessary result of this analysis is a determination that bankruptcy courts can—and indeed, must—preside over jury trials in core proceedings. The practical effect of this decision, however, will be limited: by its terms, the seventh amendment attaches only to "suits at common law"; and, because most suits "at common law" will be non-core or related proceedings rather than core proceedings, and thus triable in state courts or in the federal district court, the opportunity for jury trials in bankruptcy courts will be limited indeed.

*Id.* at 265–266 (footnotes and citations omitted); *accord American Universal Ins. Co. v. Pugh*, 821 F.2d 1352 (9th Cir.1987); *Dailey v. First Peoples Bank of New Jersey*, 76 B.R. 963 (D.N.J.1987); *In re Globe Parcel Service, Inc., supra; In re Kenval Marketing Corp.*, 65 B.R. 548 (E.D.Pa. 1986); *In re Gaildeen Ind., Inc.*, 59 B.R. 402 (N.D.Cal.1986); *In re O.P.M. Leasing Services, Inc.*, 48 B.R. 824, 13 B.C.D. 114, 12 C.B.C.2d 1322 (S.D.N.Y.1985); *In re Silver Mill Frozen Foods, Inc.*, 80 B.R. 848, 16 B.C.D. 601 (Bankr.W.D.Mich.1987) (correctly finding that *Schoenthal* held that defendants who did not file proofs of claim had right to jury trial of preference action while *Katchen* held that defendants who did file proofs of claim could not demand jury trial); *In re Boss–Linco Lines, Inc.*, 55 B.R. 299, 13 B.C.D. 1028 (Bankr.W.D.N.Y.1985).

In *In re Kenval Marketing Corp.*, 65 B.R. at 553, the district judge succinctly explained why he could not accept the analysis found in the several cases which said that there is no right to a jury trial in core proceedings because all core proceedings were inherently equitable in nature. He was

persuaded that the classification of a matter as a core proceeding does not eliminate a litigant's constitutional right to a jury trial. Rather, once a proceeding is classified as a core proceeding, the court is still required to determine whether the action is one at law or lies in equity in deciding the right to a jury trial.

In *Schoenthal*, the Supreme Court applied the law/equity test and held that preference actions, such as the one brought by the trustee here, which seek nothing other than money damages are legal, as opposed to equitable, in nature. Accordingly, it held that a jury trial was required when requested. *Katchen* did not overrule *Schoenthal*.

14. And plenary jurisdiction when consented to by the parties.

In this case, defendants Penn General and RHR did not file a proof of claim against the estate. Under the *Katchen* analysis, then, they have not submitted themselves to the "summary jurisdiction" of the bankruptcy court. Consequently, under *Schoenthal*, they are entitled, as a matter of *constitutional* law, to a jury trial of the preference action.

Although persuaded by the *M & E Contractors* line of cases that *Schoenthal* requires that a demand for jury trial of preference avoidance actions be honored, we are compelled by *stare decisis* to hold otherwise. *In re Hendon Pools of Michigan, Inc., supra,* a domestic district court opinion, held that preference avoidance actions are not triable to a jury, even when the defendants had not filed claims against the estate. We are bound by higher court precedent to deny the defendants' demand for jury trial of the core proceedings; *In re Moisson,* 51 B.R. 227 (Bankr.E.D.Mich. 1985); *In re St. Louis Freight Lines, Inc.,* 45 B.R. 546, 551, 12 B.C.D. 647, 11 C.B.C.2d 1317 (Bankr.E.D.Mich.1984);[15] accordingly, those counts involving core proceedings may be tried in the bankruptcy court and without a jury.

■ However, the defendants are entitled to a jury trial of the non-core counts. It is obviously inefficient for the bankrupt-

cy court to try the core counts and have some other court try the non-core counts. Many courts facing a jury trial of a non-core proceeding have merely exercised their discretion to abstain under the first sentence of 28 U.S.C. § 157(d) and have let the matter proceed to trial in a state court. *See, e.g. In re Atlas Automation, Inc., supra.* However, here, the federal court should not abstain. Instead, since there are some clearly bankruptcy (i.e.: federal) causes of action included within the lawsuit, which arise from a common nucleus of operative fact with the non-federal causes of action, it could and ought to exert pendent jurisdiction, *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), over the remaining non-federal counts. Therefore, among the alternatives, to-wit: discretionary withdrawal of the reference or discretionary abstention, the better choice would be withdrawal of the reference. *See In re Northern Design, Inc.,* 53 B.R. 25 (Bankr.D.Vt.1985).

## VENUE

The debtor's principal place of business and principal assets, as listed on the debtor's voluntary petition for relief, were in Royal Oak, Michigan. Royal Oak happens to be within the County of Oakland. According to Rule 7(a)[16] of the Local Rules of

---

**15.** We note an additional impediment to the conducting of a jury trial on the preference action. Rule 33(a) of the Local District Court rules for this district seems to vest all of the constitutionally delegable district court jurisdiction in the bankruptcy court. However, Rule 33(c)(1) withdraws a small part of that jurisdiction. It says:

In any case or proceeding under this Rule in which a jury trial is demanded, the party making the demand shall state whether it consents to a jury trial conducted by the Bankruptcy Judge. If such consent is given, each additional party to the case or proceedings shall then state whether it consents to a jury trial by the Bankruptcy Judge in the next pleading it files, or, if no pleading is required, within ten days after service of the jury demand. The failure of a party to so indicate shall be deemed a refusal to consent. If all parties consent, and if the case is properly triable by a jury, the Bankruptcy Judge shall conduct the jury trial. Matters determined in a jury trial before a Bankruptcy Judge shall not be reexamined by another jury, notwith-

standing any implication to the contrary in subparagraph (a)(3)(B).

Thus, even if we were free to hold that a preference action is triable to a jury, Rule 33(c) restricts us procedurally from conducting it unless all parties consent. As noted earlier, the defendants have not consented.

**16.** Rule 7(a), at the time this lawsuit was filed, stated:

a. Administrative Units.

The work of the Court is divided into five Administrative Units as follows: Detroit, Flint, Ann Arbor, Port Huron and Bay City. Clerk's offices are maintained at Detroit, Flint, Ann Arbor and Bay City. The Clerk's office for the Port Huron Administrative Unit is Detroit. The counties comprising each Administrative Unit are as follows:

1. Detroit—Civil Cases: Macomb, Oakland and Wayne—Criminal Cases: Macomb, Oakland, St. Clair, Sanilac and Wayne.

2. Flint—Civil and Criminal Cases: Genesee, Lapeer, Livingston and Shiawassee

the United States District Court for the Eastern District of Michigan, (hereafter L.D.R.) cases arising from Oakland County are to be administered in the Detroit Administrative Unit of the Southern Division of the Eastern District of Michigan. Rule 7(e) states that pleadings "may be filed with the Clerk's office in any Administrative Unit. Thereafter the papers will be transferred to the Clerk's office in the appropriate Administrative Unit." Furthermore, Rule 7(f) states "a case improperly assigned to an Administrative Unit shall be transferred to the proper Administrative Unit." As noted in *In re Romzek*, 50 B.R. 720, 722, 13 C.B.C.2d 924 (Bankr.E.D.Mich. 1985), this automatic transfer procedure has not been operative in the bankruptcy court. Thus, as a practical matter, it requires a motion by a party in interest or by the court *sua sponte* to effectuate transfer. Such a motion, in the context of this proceeding, has been made. It ought to be granted.

The plaintiff argues that 28 U.S.C. § 1412,[17] Bankruptcy Rule 1014(a)(2),[18] L.D.R. 7(d)(2),[19] and Local Bankruptcy Rule 106(e) (hereafter L.B.R. ___ (E.D.M.))[20] permit the Court to retain a case filed in an improper administrative unit. With respect to 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a)(2), we have already held to the contrary. *In re Romzek, supra.*

The plaintiff derives no benefit from L.B. R. 106(e) (EDM) because the subrule simply

does not address the power of a court to *retain* a case which ought to have been filed elsewhere; it merely says that a properly filed case may be transferred to any other court location within the district, whether or not it would have been a proper location originally. Similarly, L.D.R. 7(d)(2) provides that the court which has the case properly before it may exercise its discretion to transfer the case to another court location. Under each rule, the motion to effectuate such a transfer must be made to the court in the proper location. To allow otherwise would encourage sloppiness or forum shopping. *In re Romzek, supra.*

Accordingly, the venue of the bankruptcy case ought to be transferred to the Detroit Administrative Unit. This proceeding should follow the bankruptcy case to Detroit. The plaintiff is a probate estate in Washtenaw County; defendants Penn General and RHR are located in Oakland County; and the cause of action arose in either of those counties. The appropriate place of holding court with respect to this proceeding should, therefore, be either Detroit or Ann Arbor. Since we will transfer the case to Detroit, the judge to whom this case is subsequently assigned (with final decision probably by a district judge) may determine where this adversary proceeding should be tried—either before a district judge in Ann Arbor or one in Detroit.

3. Ann Arbor—Civil and Criminal Cases: Jackson, Lenawee, Monroe and Washtenaw.
4. Port Huron—Civil Cases: St. Clair, Sanilac, and Macomb as provided in paragraph c(2) below.
5. Bay City—Civil and Criminal Cases: Alcona, Alpena, Arenac, Bay, Cheboygan, Clare, Crawford, Gladwin, Gratiot, Huron, Iosco, Isabella, Midland, Montmorency, Ogemaw, Oscoda, Otsego, Presque Isle, Roscommon, Saginaw and Tuscola.

**17.** 28 U.S.C. § 1412 states:
A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

**18.** Bankruptcy Rule 1014(a)(2) states:
(a) Transfer of cases ...
(2) Case filed in improper district. If a petition is filed in an improper district, on timely

motion of a party in interest and after hearing on notice to the petitioners and to other persons as directed by the court, the case may be retained or transferred to any other district if the court determines that the retention or transfer is for the convenience of the parties and witnesses in the interest of justice. Notwithstanding the foregoing, if no objection is raised, the court may, without a hearing, retain a case filed in an improper district.

**19.** At the time this case was filed, what now appears as Rule 7(d)(2) was codified as Rule 7(f)(2).

**20.** L.B.R. 106(e) (EDM) states:
**(e) Transfer of Case or Proceeding.** Upon notice and hearing, a Judge may, in the interest of justice or for the convenience of the parties, transfer a case or proceeding to any other court location within the District.

CONCLUSION

In conclusion, we have held that this adversary proceeding involves both core and non-core causes of action but that federal jurisdiction of all counts is proper under 28 U.S.C. § 1334.

We have also determined that the defendants are not entitled to a jury trial with respect to the core causes of action, although they are entitled to a jury trial with respect to the non-core causes of action.

Because we have held that it would be impractical, if not illegal, for the bankruptcy court to conduct the jury trial of the non-core causes of action, we hereby recommend to the district court that it withdraw the reference of this case pursuant to 28 U.S.C. § 157(d). However, we hold that such withdrawal of the reference is not mandatory in this case.

Finally, we have held that this bankruptcy case should have been filed in Detroit and so we will, by separate order, transfer the case to the Detroit Administrative Unit for further proceedings. Likewise, we will transfer this adversary proceeding to Detroit for further proceedings.

This opinion shall stand as the bankruptcy court's report and recommendation to the district court with respect to the motions to dismiss, for withdrawal of reference, and for abstention. 28 U.S.C. § 157(c)(1) [21] and L.D.R. 33(b)(1).[22]

Dated: Nov. 18, 1987.

---

**21.** 28 U.S.C. § 157(c)(1) states:
A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected.

**22.** L.D.R. 33(b)(1) states:
(b) Matters To Be Heard and Determined or Tried by District Judges; Recommendations from the Bankruptcy Judges
(1) Motions
(a) The Bankruptcy Judges shall make recommendations concerning:
(i) a motion by a party under 28 U.S.C. § 1334(c) for abstention:
(ii) a motion by a party under 28 U.S.C. § 1452(b) for remand;

(iii) a motion by a party under 28 U.S.C. § 157(d) for withdrawal of reference of a case or proceeding, in whole or in part, to a Bankruptcy Judge, and of a proceeding requiring consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce, and
(iv) a motion by a party under 28 U.S.C. § 157(b)(5) for transfer of venue of personal injury tort and wrongful death claims.
(b) Any motion shall be filed with the Bankruptcy Clerk and shall be first heard by a Bankruptcy Judge. The Bankruptcy Judge shall make a recommendation concerning the disposition of the motion, copies of which shall be mailed to the parties in accordance with the procedures set forth in Local Rule 33(a)(3)(B). The District Judge may accept, reject or modify, in whole or in part, the recommendation of the Bankruptcy Judge and shall determine the disposition of the motion.